## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VIVIAN VASSER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0185 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| ROBERT MCDONALD, | : | | |
| SECRETARY OF THE UNITED STATES | : | | |
| DEPARTMENT OF VETERANS AFFAIRS[1] | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER

## I.  INTRODUCTION

Plaintiff Vivian Vasser ("Vasser") brings suit against Defendant Robert McDonald,

Secretary of the United States Department of Veterans Affairs ("VA"), alleging violations of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.  Before the Court is

Defendant's Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue or,

alternatively, to transfer the case to the Middle District of Florida (Tampa Division).  For the

reasons set forth below, the Court will deny Defendant's motion to dismiss for improper venue

and decline to transfer the case to the Middle District of Florida.

---

[1]        Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as
defendant the current Secretary of the United States Department of Veterans Affairs, Robert
McDonald, for former Secretary Eric Shinseki.

## II. FACTUAL ALLEGATIONS

Vasser, an African-American woman, is a licensed social worker and supervisory social worker/team leader, GS-12/9, at the Eastside Vet Center in Maple Heights, Ohio. Am. Compl., ECF No. 5, at ¶ 6. Vasser began her career in the United States Military in 1976, and she continued to serve in the United States Army as a clinical social worker starting in 1997 and as the Regional Director of Psychological Health starting in 2009. *Id.* ¶ 7. Beginning in 1993, Vasser also began working as a clinical coordinator for the Readjustment Counseling Service ("RCS") at the VA, and she achieved the role of supervisory social worker/team leader in 2000. *Id.* ¶ 8. In 2006, Vasser was appointed to the RCS Social Worker Professional Standards Board. *Id.* ¶ 9.

RCS is composed of seven regions across the United States, and each region is supervised by a regional manager, who is assisted by a deputy regional manager. *Id.* ¶ 11. Dr. Alfonso Batres ("Dr. Batres"), a Hispanic male and the RCS Chief Officer, supervised the regional managers from the VA's headquarters in Washington, D.C., during the alleged discriminatory events. *Id.* ¶ 12. Vasser alleges that Dr. Batres had sole hiring authority for RCS regional manager positions and served as the approving authority for RCS deputy regional manager positions. *Id.* In RCS's thirty-four year history, only one African-American woman was hired as a regional or deputy regional manager, and that individual filed and eventually settled an Equal Employment Opportunity ("EEO") complaint against Dr. Batres based upon alleged racial and gender discrimination. *Id.* ¶ 14. As a result of that complaint, Dr. Batres allegedly told at least one unnamed RCS regional manager that he would never hire another African-American woman as a regional or deputy regional manager. *Id.*

Beginning in 2007, Vasser applied for three regional manager GS-13 and GS-14 positions and three deputy regional manager GS-13 positions within RCS at various locations throughout the United States—including Dallas, Texas; Towson, Maryland; St. Louis, Missouri; and Bay Pines, Florida—but she was not selected for promotion to any of the positions through the VA Healthcare Systems Merit Promotion Plan, which governs the VA's merit promotions. *Id.* ¶¶ 16, 17-19.  Under the Merit Promotion Plan, competitive promotions require certain employment practices, such as the convening of panels and assessments of a candidate's background using Knowledge, Skills, Abilities and Other Characteristics ("KSAOs").  *Id.* According to the applicable Merit Promotion Plan, the selecting official must use performance-based interviewing and must indicate the "best qualified" candidates on the promotion certificate.  *Id.*  The Plan also dictates that when there are more than eight qualified candidates for promotion, a panel must be convened.  *Id.*  These panels are then required to evaluate candidates on the extent to which they possess the KSAOs relevant to the position, and to ascertain the relevancy of the candidate's background to the KSAOs.  *Id.*  If a panel is not convened, the selecting official must explain the method of evaluation and basis for selection. *Id.*  A determination of "best qualified" candidates must be based upon a "procedure that is job-related and applied fairly and consistently."  *Id.*

The applications at issue in the instant litigation mainly involve the Bay Pines, Florida, vacancies.  In September 2008, Vasser applied for a position as deputy regional manager in Bay Pines under Vacancy Announcement No. MPA 08-531.  *Id.* ¶ 18.  Vasser was certified and interviewed by Regional Manager John Walker, who is an African-American male.  *Id.*  Walker advised Vasser that he would recommend her for selection, and he even encouraged her to begin looking for a residence in Florida.  *Id.*  On January 29, 2009, a human resources representative

told Vasser that the vacancy announcement had been "cancelled." *Id.* Walker informed Vasser that his supervisor and the deciding official, Dr. Batres, would "never" approve Vasser's promotion.[2] *Id.* After learning this, Vasser filed an EEO complaint of discrimination for her non-promotion under this vacancy announcement. *Id.*

On April 27, 2009, another announcement, No. 2009-1996-AA, was issued by RCS for the GS-13 deputy regional manager position in Bay Pines with a closing date of May 28, 2009. *Id.* ¶ 19. The job description for the new announcement was identical to the description of the prior cancelled position for which Vasser had been deemed qualified and interviewed. *Id.* The announcement contained six KSAOs and required candidates to address these rating factors, and failure to address the factors could result in a candidate receiving a lower rating during the evaluation process. *Id.* ¶ 20.

In May 2009, Vasser submitted an application for promotion under this new vacancy announcement. *Id.* ¶ 21. In addition to her other supporting documents, she submitted a thirteen-page response to the KSAOs rating factors. *Id.* Wayne Plummer, a Caucasian male, also applied for promotion under the Bay Pines vacancy announcement. *Id.* ¶ 22. Plummer began his career with RCS as a readjustment therapist in 2003, and in 2007 he was promoted to supervisory social worker/team leader. *Id.* Vasser alleges that Plummer did not address the KSAOs rating factors in his application, nor did he provide any supporting materials other than academic transcripts. *Id.* On June 2, 2009, eleven candidates, including Vasser and Plummer, were certified as eligible for promotion. *Id.* ¶ 23. At this point, Walker was on medical leave

---

[2]    Vasser does not explain the basis of Walker's statement, although it appears that she is implying that Dr. Batres would "never" hire her because of her race and age. It is also unclear whether Walker was the recipient of Dr. Batres's aforementioned remark about never hiring another African-American woman for the regional manager or deputy regional manager position, although that might be a reasonable inference.

and Dr. Batres allegedly had assumed control of the hiring process for this Bay Pines vacancy announcement. *Id.* ¶ 24.

In violation of Merit Promotion Plan Article 22, Vasser alleges that no panels were convened, nor were any ratings established. *Id.* ¶ 25. On June 2, 2009, four of the eligible candidates, including an African-American woman other than Vasser, were referred as "best qualified" for the position. *Id.* ¶ 26. On July 16, 2009, a Personnel Action requesting the promotion of Plummer to the deputy regional manager position was submitted. *Id.* ¶ 27. On August 17, 2009, Dr. Batres formally selected Plummer for the position without submitting explanations for how the ratings and selection were decided, as the Merit Promotion Plan requires. *Id.* ¶ 28. On November 10, 2009, Vasser filed another EEO complaint of discrimination for her non-promotion under this vacancy announcement. *Id.* ¶ 29.

Around late 2010 to early 2011, RCS announced an open GS-14 regional manager position in the mid-Atlantic region. *Id.* ¶ 30. Vasser, then a GS-12, applied because she had already been certified as eligible for GS-14 positions. *Id.* However, the vacancy was never filled despite the presence of at least two qualified candidates in Vasser and Joann Thompson, another African-American woman, and no new vacancy announcement for this position has been issued since 2011. *Id.* Thompson filed complaints of discrimination against Dr. Batres for his failure to promote her to deputy regional manager in Towson, Maryland, and her civil action is pending in the United States District Court for the District of Columbia. *Id.*

Turning back to the Bay Pines positions, by 2010 John Walker had retired due to his medical condition, and in late 2010 a new vacancy announcement for the Bay Pines regional manager position was announced. *Id.* ¶ 32. Vasser alleges that Dr. Batres was again the selecting official, and the position was announced as GS-14 nationwide for all current,

permanent VA employees. *Id.* Vasser was deemed qualified and certified as a GS-14 in January 2011 based on her experience and education. *Id.* In August 2011, however, Dr. Batres "decided not" to fill the position, despite the presence of at least one qualified candidate in Vasser, leading Vasser to file another EEO complaint for discrimination for her non-promotion to this vacancy. *Id.* ¶ 34.

On March 30, 2011, the Bay Pines regional manager position was announced again under Vacancy No. 454888 as a GS-14 position open to all United States citizens. *Id.* ¶ 35. According to Dr. Batres, the announcement was made nationwide to attain a larger selection pool, but the announcement was "closed" when Vasser was certified for the second time as a GS-14 in April 2011. *Id.* ¶¶ 35-36. Vasser filed an EEO complaint of discrimination for this non-selection based on race, gender, and retaliation for her previous EEO complaints against Dr. Batres. *Id.* ¶ 38.

Vasser further alleges that by the spring of 2011, Dr. Batres had decided to hire Sarita Figueroa, a Latina female, for the Bay Pines regional manager position. *Id.* ¶ 37. In accordance with the alleged plan, on August 11, 2011, Dr. Batres—with the assistance of another, unnamed, D.C.-based RCS employee—issued a "redescription" of the RCS regional manager position in Bay Pines to ensure that Vasser could not compete with Figueroa during the formal selection process. *Id.* ¶ 39. The position was, allegedly for the first and only time, classified as a GS-15. *Id.* Dr. Batres could have upgraded the classification as early as May 2010, but he waited until August 2011 to do so. *Id.* According to Vasser, the position classification was changed in order for Figueroa to be certified, and currently there are only two GS-15 RCS regional managers, while the rest continue to be GS-14s. *Id.* Despite the reclassified GS grade, the position's clinical description remained unchanged. *Id.* ¶ 40.

On September 13, 2011, another vacancy announcement for the RCS regional manager position in Bay Pines, Florida, was published under Vacancy No. 535157. *Id.* ¶ 42. Vasser applied on September 18, 2011, submitting her application with the required response to the position's KSAOs, as well as possessing a ten-point disabled veteran's preference. *Id.* ¶ 47. For the first time since 2006, Dr. Batres restricted the regional manager position announcement geographically to the Veterans Integrated Service Network 8 ("VISN 8") area, which serves Florida, southern Georgia, Puerto Rico, and the U.S. Virgin Islands. *Id.* On September 23, 2011, Vasser was advised that she was geographically ineligible for the position, as she resided in Ohio. *Id.* ¶ 46, 48.

Though Figueroa submitted her application after the closing of the vacancy announcement, she was selected within two and a half weeks of applying—despite the announcement previously having been open for one and a half years. *Id.* ¶ 49. Vasser alleges that no other candidates applied besides her and Figueroa. *Id.* ¶ 50. In addition, Vasser alleges that Figueroa did not meet the following vacancy announcement requirements: she did not possess behavioral or social sciences degrees nor did she have equivalent experience; her last work for RCS was as a GS-11 administrative officer; and she did not have four years of clinical experience. *Id.* ¶ 51. The position's description and KSAOs were substantially similar to those for which Vasser had previously qualified. *Id.* ¶ 53.

Finally, Vasser alleges that after receiving multiple complaints, including her own, about Dr. Batres's employment practices, the VA Office of the Inspector General ("OIG") Administrative Investigations Division launched an investigation into the hiring of Sarita Figueroa. *See* Am. Compl. at ¶ 58; Pl.'s Mem. Opp'n Mot. to Dismiss, ECF No. 11 at 6. On August 22, 2012, the OIG reported its findings that Dr. Batres had committed prohibited

personnel practices by, among other things, providing Figueroa with advantages not afforded to any other applicant, obstructing Vasser's right to compete for a job through fair and open competition, and making materially false statements to OIG investigators in an effort to cover up his actions. *See* Pl.'s Mem. Opp'n Mot. to Dismiss, Ex. A, ECF No. 11-5 ("OIG Report") at 2.

The OIG Report documents numerous occurrences of Dr. Batres not selecting candidates from qualified pools for the GS-14 regional manager position in Bay Pines, Florida, from December 2010 to July 2011. *See* OIG Report at 4. At the same time, Dr. Batres had known Figueroa for twenty-eight years, having first met her at an RCS training event in Puerto Rico. *Id.* He described their relationship as "all work" and as them being "professional acquaintances," and he claimed to have had no contact with her since 2001. *Id.* at 6. Dr. Batres also testified under oath that he did not plan to hire Figueroa prior to the regional manager position being announced, but email records reflected that Figueroa was his preferred candidate and that he had intended, months prior to the competitive announcement, to place Figueroa in the reclassified GS-15 position in Bay Pines. *Id.* at 6-7. Email records also reflected that Dr. Batres and Figueroa were in consistent contact after 2001 and that they had a "close, personal" friendship. *Id.* at 7.

The OIG Report describes, in detail, one particular EEO complaint against Dr. Batres on behalf of an unnamed applicant for the Bay Pines position who alleged racial, gender, and retaliation discrimination. *Id.* at 5. The OIG Report asserts that this complaint could have been a motivating factor in Dr. Batres providing false testimony to the OIG. *Id.* at 5, 23. Though the OIG Report does not name Vasser as the source of the complaint, the underlying EEO complaint's factual allegations strongly indicate that the complaint at issue was indeed Vasser's. *Id.* at 5. Therefore, although the OIG Report does not speak to the merits of Vasser's EEO

complaint against Dr. Batres, the OIG apparently felt that the information in her complaint was relevant enough to the investigation into the Bay Pines hiring process to warrant mention in the report. *Id.* at 23. Dr. Batres retired from RCS on December 31, 2012. *See* Am. Compl. at ¶ 58.

## III. ANALYSIS

Defendant moves to dismiss Vasser's complaint for improper venue or, alternatively, to transfer the case to the Middle District of Florida (Tampa Division). For the reasons explained below, this Court finds that venue is proper in the District of Columbia under both the Title VII special venue statute and the general venue statute in 28 U.S.C. § 1391(e), and the Court also declines to transfer the case to the Middle District of Florida.

### A. Improper Venue

Defendant moves to dismiss Vasser's complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). In considering a Rule 12(b)(3) motion, a court accepts a plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in a plaintiff's favor, and resolves any factual conflicts in a plaintiff's favor. *See Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276–77 (D.D.C. 2002)). A court may consider materials outside of the pleadings, *see Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002), and because it is a plaintiff's obligation to institute the action in a permissible forum, a plaintiff usually bears the burden of establishing that venue is proper. *See Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). But to prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue. *See 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.,* 148 F. Supp. 2d 50, 54 (D.D.C. 2001). Unless there are pertinent factual

disputes to resolve, a challenge to venue presents a pure question of law. *See Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

1. Title VII's Special Venue Provision

In Title VII cases, Congress intended to limit venue to those jurisdictions actually concerned with the alleged discrimination. *See Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969). As such, Congress enacted a special venue provision under which a plaintiff may bring a Title VII action only in a district that qualifies under one of the tests enumerated in the statute:

> [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e–5(f)(3). If a plaintiff brings suit in a district that does not satisfy at least one of the venue requirements listed in § 2000e–5(f)(3), venue is improper and a court must dismiss the case, or if it is in the interests of justice, transfer the case to a proper venue under 28 U.S.C. § 1406(a).

*a. Where the Unlawful Employment Practice Was Committed*

Defendant suggests that all alleged unlawful employment practices in the complaint took place in Bay Pines, Florida, and as such, venue is not proper in the District of Columbia. *See* Def.'s Reply in Supp. of Mot. to Dismiss, ECF No. 13 at 2. The first statutory test for Title VII venue focuses on the locus of the alleged discrimination, and a court must determine venue by applying a "commonsense appraisal" of events having operative significance. *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20-22 (D.D.C. 2002) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). A court must also look to the place where the decisions and actions

concerning the employment practices occurred, *see Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 663 (D.D.C. 1982), and the unlawful employment practice in failure to promote claims, which Vasser alleges here, must include the "material events" related to the underlying claims of discrimination that contributed to the ultimate selection decision, *see Miller v. Insulation Contractors*, 608 F. Supp. 2d 97, 102 (D.D.C. 2009).

Because federal agencies often are headquartered in the District of Columbia, courts in this Circuit are especially vigilant about how strictly the Title VII venue provision is applied in order to avoid finding proper venue in the District for every discrimination lawsuit filed against a government agency, no matter where the employee was located or where the discrimination actually occurred. As such, venue cannot lie in the District of Columbia when "a substantial part, if not all, of the employment practices challenged" took place outside of the District, even when actions taken within the District "may have had an impact on the plaintiff's situation." *See, e.g.*, *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (citing *James*, 227 F. Supp. 2d at 20). Nonetheless, the converse is also true: venue in the District of Columbia is not destroyed simply because decisions made within the District affected a plaintiff outside the District. *Id.* at 289 (citing *Miller*, 608 F. Supp. 2d at 97).

Defendant argues that the material events encompassing the alleged discrimination against Vasser involved the administrative processes carried out by RCS human resources employees in Florida. *See* Def.'s Mot. to Dismiss, ECF No. 9-1 at 7. Vasser, however, has not named any, nor has Defendant identified any, Florida-based RCS employees with the power to promote, alter the substantive duties under a management-level description, or upgrade a GS-14 position to GS-15, which are some of the discriminatory actions complained of here. Additionally, neither party has named a Florida-based RCS employee who knowingly

participated with Dr. Batres in the alleged conspiracy to purposely deny Vasser the opportunity to compete for the Bay Pines regional manager position.

The first prong of the venue provision focuses on the location of the "unlawful activity," not benign activities such as the processing of applications. For example, in Vasser's first application for the Bay Pines position, John Walker recommended her for selection. When Vasser was not selected, that clearly was not due to any discriminatory act by Walker, but rather by Dr. Batres in the District of Columbia. As such, the events that occurred in Florida were solely non-discriminatory and administrative in nature and do not constitute the core allegations of discrimination in Vasser's complaint. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 11 at 12. Instead, as a review of the complaint reveals, all material events, decisions, and actions relating to Vasser's allegations of unlawful employment practices occurred through Dr. Batres in the District of Columbia.

Specifically, though the impact of Dr. Batres's alleged discriminatory practices was felt in Florida, his decisions as the sole hiring authority for the relevant Florida regional manager position were made from the District of Columbia, which is where he worked for the VA. *Id.* Defendant does not contest Vasser's allegation that Dr. Batres took control over the hiring process for the Bay Pines regional manager vacancy in 2009 after John Walker, the prior regional manager, was placed on medical leave. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 11 at 4. Further, Vasser alleges that Dr. Batres improperly decided to expand and then restrict the geographic boundaries of the Florida region's RCS vacancy announcements from his position in the District of Columbia as part of his scheme to hire Figueroa, which also demonstrates his significant control over the hiring process and is more evidence that, at the very

least, a "substantial part" of the discriminatory acts occurred in the District.  *Id.* at 6; *see, e.g.*, *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (citing *James*, 227 F. Supp. 2d at 20).

In addition, the OIG Report describes Dr. Batres's apparent control over the non-selection of qualified candidates like Vasser for the Bay Pines regional manager position, and the report even references her EEO complaint against Dr. Batres in detail.  *See* OIG Report at 2.  Indeed, the OIG Report includes Dr. Batres's sworn testimony in which he admits having hiring authority for the Bay Pines position, including the decision to hire Figueroa.  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 11 at 4; OIG Report at 6.  Thus, the OIG Report supports Vasser's allegations that Dr. Batres had sole hiring authority for the Bay Pines regional manager position, which, in turn, further establishes that the alleged unlawful employment practices took place in the District of Columbia. [3]

Accordingly, the Court finds that the alleged unlawful employment practices occurred in the District of Columbia, which makes venue for Vasser's Title VII claim proper in this Court. [4]

---

[3]    Defendant's additional argument that Vasser conceded the location of her discrimination as "occur[ing]" in Florida has no merit: Defendant does not cite to, nor does the Court find, any legal precedent requiring the Court to bind a plaintiff to her EEO filing in the venue decision.  *See* Def.'s Mot. to Dismiss, ECF No. 9-1 at 8.  Defendant also asserts that venue is improper because "the witnesses are located" in Florida, but the location of witnesses is not relevant under the Title VII venue analysis.  Rather, the location of witnesses is one factor when considering whether to transfer a case, which is separate and distinct from the venue analysis at issue now.  *See Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

[4]    Defendant also argues that venue is improper under the second prong of the Title VII special venue statute, which "courts in this district have interpreted … to mean that venue is proper … where the 'master set' of employment records is located."  *Taylor v. Shinseki*, No. 13-1416, 2014 WL350261, at *3 (D.D.C. Jan. 31, 2014) (citing *Khalil v. L-3 Commc'ns Titan Grp.*, 656 F. Supp. 2d 134, 136 (D.D.C. 2009)).  The parties provide conflicting allegations of where the master set of documents concerning Vasser are located, however, so it remains unclear whether venue is proper in the District of Columbia on this basis.

The third and fourth prongs of the Title VII special venue provision also do not establish proper venue in the District of Columbia.  Specifically, the third prong allows for venue "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice[.]"  42 U.S.C. § 2000e–5(f)(3).  Vasser never applied for employment

## 2. ADEA General Venue Provision

The ADEA lacks a specific venue provision, so venue for the ADEA claims is governed

by the general venue provision in 28 U.S.C. § 1391(e), which provides in relevant part:

> A civil action in which a defendant is an officer or employee of the United States
> or any agency thereof acting in his official capacity or under color of legal
> authority, or an agency of the United States, or the United States, may, except as
> otherwise provided by law, be brought in any judicial district in which (1) a
> defendant in the action resides, (2) a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of the property that is the
> subject of the action is situated, or (3) the plaintiff resides if no real property is
> involved in the action.

28 U.S.C. § 1391(e); *accord Hill v. Napolitano*, 839 F. Supp. 2d 180, 182 (D.D.C. 2012); *see*

*also Corbett v. Jennifer*, 888 F. Supp. 2d 42, 45 (D.D.C. 2012) ("For plaintiff's action, there are

two relevant venue statutes: venue for plaintiff's Title VII action is governed by 42 U.S.C. §

2000e–5(f)(3), while venue for plaintiff's other counts is determined by the general venue

statute, 28 U.S.C. § 1391.").  After considering Vasser's ADEA claims under the general venue

statute, the Court again finds that the District of Columbia is the proper venue for this case.

### a. Where the Defendant Resides

Venue is proper under 28 U.S.C. § 1391(e) where a defendant in the action resides.

Vasser brings suit against Defendant, Robert McDonald, in his official role as Secretary of the

VA.  *See* Am. Compl., ECF No. 5 at ¶ 5.  The Department of the VA is a duly authorized and

organized agency of the United States with its headquarters located in the District of Columbia.

*See id.*; Def.'s Mot. to Dismiss, ECF No. 9-1 at 10.

---

within the District of Columbia, which eliminates venue in the District under this prong.  Under
the fourth prong, venue is proper in the location of a defendant's principal office only if the
defendant is not found within any other districts where venue is appropriate.  *See* 42 U.S.C. §
2000e-5(f)(3); *see also James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002).  The parties
do not dispute that Defendant can be found in the District of Columbia, and as such, the fourth
prong does not apply.  *See* Am. Compl., ECF No. 5 at ¶ 12; Def.'s Reply in Supp. of Mot. to
Dismiss, ECF No. 13 at 2.

Officers and agencies of the United States can have more than one residence, and venue thus can properly exist in more than one district. When an officer or agency head performs a "significant amount" of his or her official duties in the District of Columbia, the District of Columbia is a proper district for venue. *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607 at *4 (D.D.C. June 29, 2006) (citing *Bartman v. Cheney*, 827 F. Supp. 1, 2 (D.D.C. 1993)). Both Vasser and Defendant seem to agree that the Department of the VA, as well as Mr. McDonald, is headquartered in the District of Columbia and both parties also agree that Dr. Batres, a principal actor in the case and high-level employee of the VA at the time of the alleged misconduct, conducted all of his official duties from the District of Columbia. The Court therefore concludes that under the first prong of § 1391(e), venue is proper in the District of Columbia.

   b. *Where a Substantial Part of the Events That Gave Rise to the Claim Occurred*

Venue is also proper under 28 U.S.C. § 1391(e) in the jurisdiction in which a substantial part of the events or omissions giving rise to the claim occurred. As the Court explained under the Title VII venue analysis, the material events, decisions, and actions relating to Vasser's allegations of unlawful employment practices occurred through Dr. Batres in the District of Columbia. As such, the Court finds that a substantial part of the alleged unlawful employment discrimination that gave rise to the ADEA claim took place in the District of Columbia.[5]

---

[5]    The third prong of the general venue provision allows for venue where the Plaintiff resides. 28 U.S.C. § 1391(e). Plaintiff currently resides in Ohio, where she is employed at the Eastside Vet Center, and there is no real property involved in the action. *See* Am. Compl., ECF No. 5, at ¶ 6. Under this prong, venue could be proper in Ohio. Nonetheless, venue in the District of Columbia has been established under the first two prongs of § 1391(e) as well as under the Title VII special venue provision.

## B. Transfer of Venue

When venue is found proper in a judicial district, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought [.]"  28 U.S.C. § 1404(a).  "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."  *Continental Grain Co. v. Barge F.B.L. 585,* 364 U.S. 19, 26 (1960).  "[T]he main purpose of section 1404(a) is to afford defendants protection where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult or harassing to defend."  *Starnes v. McGuire,* 512 F.2d 918, 927 (D.C. Cir. 1974) (en banc).  When venue is properly laid in this district, "[t]ransfer elsewhere under Section 1404(a) must ... be justified by particular circumstances that render [this] forum inappropriate by reference to the considerations specified in that statute.  Absent such circumstances, transfer in derogation of properly laid venue is unwarranted."  *Starnes*, 512 F.2d at 925–26.

Further, § 1404(a) "vests 'discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48, 50 (D.D.C. 2000) (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988)).  The statute also "directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs.  The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"  *Stewart Org.*, 487 U.S. at 30.  The precise

"standards to be considered in determining whether to grant or deny a section 1404(a) motion to transfer are generally ... left to the discretion of the trial court," *SEC v. Page Airways, Inc.,* 464 F. Supp. 461, 463 (D.D.C. 1978), which is "broad" but "not untrammeled," *Fine v. McGuire,* 433 F.2d 499, 501 (D.C. Cir. 1970) (per curiam) (noting that the trial court must "give consideration to the traditional [forum non conveniens] factors, including the plaintiff's choice of forum").

The burden is on the moving party to establish that transfer under § 1404(a) is proper. *Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32 (D.D.C. 2008); *see also Trout Unlimited v. U.S. Dep't of Ag.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Accordingly, Defendant must make two showings to justify transfer. First, Defendant must establish that Vasser originally could have brought the action in the proposed transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Second, Defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer to that district. *Trout Unlimited*, 944 F. Supp. at 16. In evaluating a motion to transfer, a court should weigh several private- and public-interest factors. *Sheffer v. Novartis Pharm. Corp.*, 873 F. Supp. 2d 371, 375 (D.D.C. 2012) (citing *Trout Unlimited*, 944 F. Supp. at 16).

The private-interest considerations include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof. *Sheffer*, 873 F. Supp. 2d at 375; *Montgomery*, 532 F. Supp. 2d at 32. The public-interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006);

*Airport Working Group of Orange County, Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 229

(D.D.C. 2002) (internal citations omitted).  If the balance of private and public interests favor a

transfer of venue, then a court may order a transfer.  *Sheffer*, 873 F. Supp. 2d at 375 (citing

*Montgomery*, 532 F. Supp. 2d at 32).

### 1.  The Threshold Inquiry

The threshold inquiry in a § 1404(a) analysis is whether the action could have originally

been brought in the proposed transferee district.  *Blackhawk Consulting LLC v. Federal National*

*Mortgage Association*, 975 F. Supp. 2d 57, 60 (D.D.C. 2013) (citing 28 U.S.C. § 1404(a)).

Defendant proposes transfer to the Middle District of Florida.  *See* Def.'s Mot. to Dismiss, ECF

No. 9-1 at 11.  The third prong of 42 U.S.C. § 2000e–5(f)(3) establishes venue as proper "in the

judicial district in which the aggrieved person would have worked but for the alleged unlawful

employment practice[.]"  It is clear, then, that the Title VII claim could have been brought in the

Middle District of Florida, as Vasser contends that she would have worked in Bay Pines, Florida,

but for the alleged discriminatory employment practices.  It is less clear, however, whether the

ADEA claims could have been brought in Florida under the general venue statute.  28 U.S.C. §

1391(e).  Neither Vasser nor Defendant resides in Florida, and it is uncertain whether a

substantial part of the events occurred in Florida.

Nonetheless, the Court need not resolve this ambiguity in regards to the ADEA claims

because, as set out below, the interests of justice and convenience weigh against transfer to the

Middle District of Florida and weigh in favor of keeping the case in the District of Columbia.

### 2.  Private Interest Considerations

The private-interest considerations include: (1) the plaintiff's choice of forum; (2) the

defendant's preferred forum; (3) the location where the claim arose; (4) the convenience of the

parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof. *Sheffer*, 873 F. Supp. 2d at 375. Vasser has chosen the District of Columbia as the forum, whereas Defendant prefers the Middle District of Florida as the proper forum for the case.[6] The Court has found that Vasser's Title VII and ADEA claims, as discussed previously, are considered to have arisen in the District of Columbia. The parties reside in Ohio and the District of Columbia, which weighs in favor of the convenience of the District of Columbia as a forum. Relevant witnesses to Dr. Batres's alleged misconduct, including Dr. Batres himself, reside in the District of Columbia or Virginia.

Indeed, this case will focus on Dr. Batres's motivations for his alleged unlawful employment practices, thus making credibility determinations critical. Such credibility determinations will be greatly facilitated for the finder of fact if Dr. Batres is able to testify in person at trial, where his demeanor can be more easily witnessed and assessed. Because Dr. Batres lives in Virginia, he will be within this Court's subpoena power but not that of the Middle District of Florida. Finally, ease of access to proof of Vasser's claims is enhanced by remaining within the District of Columbia. Thus, the private interest considerations weigh in favor of denying transfer to the Middle District of Florida.

### 3. Public Interest Considerations

The public-interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee;

---

[6]     Ordinarily, a plaintiff's choice of forum is entitled to considerable deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal citations omitted). That deference is minimized when "the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *See Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). Contrary to Defendant's assertions, however, the Court does not find that Vasser has invented a nexus to the District of Columbia, because there are meaningful ties to the controversy in the District of Columbia.

and (3) the local interest in deciding local controversies at home. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006). Under the first factor, courts follow the principle that a transferee federal court is competent to decide federal issues correctly, and only federal statutes are involved in this case. *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (citing *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 n.6 (D.D.C. 2003)). As such, there is "no reason to transfer or not to transfer" based on this public interest factor. *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 33 (D.D.C. 2013) (citing *Nat'l Wildlife*, 437 F. Supp. 2d at 49). Further, neither party has addressed whether transfer, or the lack thereof, will cause undue delay or congestion in either court's administration of justice. Because the parties present no evidence that Vasser would receive more expedient relief in either the District of Columbia or the Middle District of Florida, this factor is not weighed in favor of either party. *See Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10, 16-17 (D.D.C. 2000).

Finally, the Court's interest in deciding local controversies at home weighs against transfer. Each state has an "interest in redressing the harms of its citizens," and although Vasser is not a citizen of the District of Columbia, her harms were allegedly perpetrated by parties living or working within the District of Columbia. *See MacMunn v. Eli Lilly Co.*, 559 F. Supp. 2d 58, 63 (D.D.C. 2008). Further, the key parties to the claims, most notably Vasser and Dr. Batres, do not reside or work in the Middle District of Florida, making that jurisdiction's local interest a minimal one at best. Finally, the District of Columbia clearly has a compelling interest in deciding disputes that involve management and supervisors working within its jurisdiction. The public interest considerations therefore also weigh in favor of denying the transfer of this case.[7]

---

[7]  In a lengthy footnote to its motion to dismiss, Defendant raises for the first and only time the issue of whether Vasser failed to exhaust administrative remedies before filing suit. *See* Def.'s Mot. to Dismiss, ECF No. 9-1, at 4 n.4. It is established that courts typically do

## IV.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion to dismiss or, alternatively, to transfer.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  November 4, 2014                              RUDOLPH CONTRERAS
                                                      United States District Judge

---

not consider cursory arguments made solely in footnotes, *see Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997) (citing *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp*, 940 F.2d 685, 697 (D.C. Cir. 1991), and that should be especially true when, as here, the defendant raises an issue briefly in a footnote in its original motion and then greatly expounds upon that argument in its reply brief, thus denying the plaintiff a fair opportunity to respond.  As such, the Court will not address Defendant's failure to exhaust argument at this time, but the Court notes that Defendant has preserved the issue for full and fair briefing in a subsequent motion if it so chooses to file one.