# IN UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| VIVIAN VASSER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-00185-RC |
| | ) | |
| DAVID SHULKIN | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF VIVIAN VASSER'S MOTION FOR
## SPOLIATION OF EVIDENCE AND SANCTIONS

COMES NOW Plaintiff, Vivian Vasser ("Ms. Vasser" or "Plaintiff"), by and through her undersigned counsel, and respectfully moves this court for spoliation sanctions against defendant, pursuant to Federal Rule of Civil Procedure 37 and this court's inherent authority. For reasons set forth below, Ms. Vasser respectfully submits that defendant was either negligent, grossly negligent, reckless and/or intentional in its failure to preserve and maintain evidence relating to prior recruitment opportunities denied to Ms. Vasser. Defendant's actions, or failure to act,  relative to the subject evidence warrants this court's scrutiny and appropriate sanctions, specifically: adverse findings of fact, appropriate inferences related to this evidence, if appropriate, a missing evidence jury instructions and attorney fees.

Ms. Vasser has advised defendant of the relief requested by this motion and defendant does not consent to the requested relief.

## I.      BACKGROUND

Vivian Vasser is an African-American female, licensed social worker and a

Supervisory Social Worker/Team Leader, GS-12/9, at the Eastside Vet Center for the Readjustment Counseling Service at the Department of Veterans Affairs.

Dr. Alfonso Batres, the then Chief of RCS, had sole hiring authority for the regional managers and was the approving authority for RCS deputy regional manager positions.

In its 35 plus year history, RCS had hired only one African-American female as a regional or deputy regional manager. Indeed, that sole African-American woman ever hired by Dr. Batres as a regional manager was the target of an adverse employment action by him, leading to her filing and settling a race and gender discrimination complaint against him. As a result, in part, of that complaint, Dr. Batres told at least one of his regional managers that he would *never* hire another African-American woman as a regional or deputy regional manager.

Beginning in 2007, Ms. Vasser applied for three Regional Manager GS 13/14 and three Deputy Regional Manager GS-13 positions at RCS in various locations throughout the United States.

In September 2008, Ms. Vasser applied for a position as the deputy regional manager in Bay Pines, Florida under Vacancy Announcement No. MPA 08-351. Ms. Vasser was certified as eligible and interviewed, along with other candidates, by the regional manager, John Walker. Mr. Walker advised Ms. Vasser that he was going to recommend her selection and encouraged her to begin looking for a residence in Florida. On January 29, 2009, a Human Resources representative informed Ms. Vasser, however, that the vacancy announcement had been "cancelled" due to "an error." On that same day, a notice was issued "canceling" vacancy announcement MPA 08-351. Memorandum, dated January 29, 2009, incorporated herein as Plaintiff's Exhibit 1.

On April 27, 2009, another announcement for the GS-13 deputy regional manager

2

position in Bay Pines was issued by the Agency under vacancy announcement 2009-1996-AA. Ms. Vasser applied and was certified as eligible for promotion. On June 9, 2009, Mr. Walker told Ms. Vasser that Dr. Batres would never approve Ms. Vasser's promotion and on August 17, 2009, Wayne Plummer, a white male candidate with substantially less experience than Ms. Vasser, was selected as the new deputy regional manager.

While on active duty, Ms. Vasser sought EEO counseling on November 10, 2009, for her non-promotion to the Bay Pines Deputy Regional Manager position in which Plummer was selected under 2009-1996-AA. In that EEO counseling, Ms. Vasser raised issues with her prior non-selections, as well, including MPA 08-351.

During her interviews and subsequent communications with the EEO counselor, Ms. Vasser described her prior promotion advancement efforts, including her efforts under MPA 08-351. Ms. Vasser further complained and enumerated her other previous unsuccessful attempts to seek promotion and demanded they be reopened and investigated. The EEO counselor determined that this information was "background information" as evidence of "motive."

On February 17, 2010, Ms. Vasser filed her first formal complaint. In the attached statement to her complaint, Ms. Vasser provided a lengthy description of her efforts to seek promotion under Vacancy announcement MPA 08-351. Ms. Vasser then proceeded to raise specific questions about the promotional practices over the last "two to three years" with the vacancy announcements in Dallas, Towson, Bay Pines, and St. Louis. Ms. Vasser specifically requested that those announcements be "open[ed] and investigated."

In late 2010, a vacancy announcement for the Bay Pines Regional Manager position was issued. VIN 417114; AN 10-234602-RS. Dr. Batres was the selecting official, and the

position was announced as GS-14 nationwide for all current, permanent VA employees. Ms. Vasser was deemed qualified and made the certificate as a GS-14 based on her experience and education in January 2011. On August 16, 2011, Ms. Vasser received notice that the position was closed.  On September 7, 2011, Ms. Vasser sought EEO counseling for this non-selection.

On March 30, 2011, the Bay Pines Regional Manager position was re-announced as Vacancy Id No. 454888. Once again, the position was announced as a GS-14 and open to all United States citizens. On August 24, 2011, received notice that the vacancy announcement had been "closed" without a selection. Ms. Vasser again made the certification as a GS-14. Ms. Vasser sought EEO counseling on September 7, 2011.

By the spring of 2011, Dr. Batres had decided to select Sarita Figueroa, a non-veteran Latino female, into the Bay Pines Regional Manager position. Despite having a qualified candidate in Ms. Vasser, the prior certificates were returned by Dr. Batres to human resources unused on August 24, 2011.

To ensure Ms. Vasser could not fairly compete with Ms. Figueroa, on August 4, 2011, Dr. Batres issued a "redescription" of the RCS Regional Manager position for the duty station in Bay Pines, Florida. The position was classified for the first, and only, time as a GS-15. On September 13, 2011, a vacancy announcement for the RCS regional manager position for a duty station in Bay Pines, Florida was issued. Vacancy No. 535157; NY-11-RNS-422068. To further exclude Ms. Vasser from fairly competing with Ms. Figueroa, for the first time since at least 2006, Dr. Batres restricted the regional manager position announcement geographically that would ensure Ms. Vasser's ineligibility.

On September 18, 2011, Ms. Vasser applied for the position and on September 23, 2011, she was advised that she was ineligible because the position was restricted to VISN 8

4

facilities. Ms. Vasser filed a charge of discrimination for this non-selection on the basis of race, gender and in retaliation for filing her previous EEO complaints against Dr. Batres.

## II.      FORMAL ADMINISTRATIVE INVESTIGATION

In July 2010, during the course of the formal internal investigation relating to the non-selection to the Bay Pines Deputy Regional Manager position under vacancy announcement 2009-1996-AA, the EEO investigator asked the agency's witnesses, Alfonso Batres and Rachelle Seybold, to respond under oath to Ms. Vasser's complaints relating to the 08-0351 recruitment. Relevant Portions of Affidavits of Alfonso Batres and Rachelle Seybold, incorporated herein as Plaintiff's Exhibit 2.

## III.      ADMINISTRATIVE DISCOVERY

Ms. Vasser requested a hearing before the Equal Employment Opportunity Commission relating to her first EEO complaint under vacancy announcement 2009-1996-AA and an Acknowledgement and Order was issued by the Administrative Judge on October 14, 2010 and served on the Office of Regional Counsel. EEOC No. 510-2010-00453X. On November 4, 2010, Ms. Vasser propounded Interrogatories and Document Production Requests on defendant through assigned agency counsel. Relevant Portions of Vivian Vasser's Requests for Interrogatories and the Production of Documents, incorporated herein as Plaintiff's Exhibit 3. By those requests, Ms. Vasser demanded interrogatory responses relating to each of the prior non-selections, including 08-351, as well as production relevant documents. Id at Interrogatory Nos. 2, 14, 15, 16, 17; Request for Documents Nos. 14, 15 and 16.

On November 8, 2010, defendant responded that it would not produce nor "address" information relating to the prior non-selections, including 08-351. Letter from Agency

Counsel, dated November 8, 2010, incorporated herein as Plaintiff's Exhibit 4.

On January 12, 2011, defendant served responses to Ms. Vasser's discovery requests. By those responses, defendant objected to the production of documents regarding the prior non-selections, including 08-351. Relevant Portions of Agency's Responses and Objections to Vivian Vasser's Requests for Interrogatories and the Production of Documents, incorporated herein as Plaintiff's Exhibit 5.

Eventually, the investigation into Ms. Vasser's second EEO complaint under Vacancy Nos. 535157, 417114 and 454888 was completed and she requested a hearing before the EEOC. EEOC. No. 510-2012-00272X. The two outstanding cases were then consolidated. Ms. Vasser withdrew her cases pending with the EEOC, requested a Final Agency Decision and filed suit.

**IV.    CIVIL DISCOVERY**

In her civil complaint, Ms. Vasser again raised issues relating to the prior non-promotions. On or about March 19, 2015, Ms. Vasser propounded discovery requests on defendant. By those requests, Ms. Vasser once again demanded information and documents relating to the prior non-selections, including 08-351. Relevant Portions of Defendant's Responses and Objections to Vivian Vasser's First Request for Interrogatories and the Production of Documents, incorporated herein as Plaintiff's Exhibit 6, Interrogatory Nos. 10, 11, 12, 13; Document Request Nos. 2, 10, 1112, 14, 16. Defendant objected to providing any information regarding the prior non-selections, including 08-351, on the grounds that claims relating to those announcements were then the subject of a motion to dismiss. Id. Defendant did not assert that documents relating to those announcements no longer existed.

Ms. Vasser protested defendant's objections in a discovery letter dated January 4,

2016. Relevant Portions of Letter to John Truong, Esq., dated January 4, 2016, incorporated herein as Plaintiff's Exhibit 7. Finally, Ms. Vasser raised the issue of production of these documents with the Court on September 28, 2016. Defendant did not proffer to the Court that the documents no longer existed. The Court granted Ms. Vasser's demand for these documents and ordered the government to produce them to Ms. Vasser.

On or about November 10, 2016, instead of producing any of the subject documents, defendant served three sworn generic Declarations from three different VA employees. Declarations of Rachelle Seybold, Michael Pearson, and Shirl Smith, incorporated herein as Plaintiff's Exhibit 8. Each declaration was nearly identical to the other. Each declaration averred, for the first time in this litigation, that a search of records was substantively unsuccessful and that pursuant to a Record Control Schedule, documents were destroyed "within two years." Accordingly, each of the declarations averred that the documents "would have been destroyed in 2010." None of the declarations asserted that the documents had *actually* been destroyed, the dates of their destruction nor by whom.

On April 7, 2017, Ms. Vasser took the deposition of Rachelle Seybold. Ms. Seybold is a Human Resource Specialist in Bay Pines, Florida, and one of defendant's declarants. By her declaration, Ms. Seybold swore that she had searched for documents relating to the MPA-0805 and MPA-08-351 positions and that she was unable to located any documents other than the actual vacancy announcement for 08-351. Id.

During her deposition, Ms. Seybold testified that she did not recall preserving any of the Bay Pines merit promotion files after the EEO investigator questioned her about the 08-351 vacancy announcement. Ms. Seybold testified, further, that she did not search any other locations within the VA other than the Bay Pines Human Resources Office, including the

7

Office of Employee Relations (an office that has played a role in assisting defendant's discovery production) or RCS central office. Ms. Seybold provided no information as to when the documents might have been destroyed nor by whom. Further, Ms. Seybold admitted that there did not exist any formal procedure or "tickler" system for document destruction under the schedule. Finally, Ms. Seybold admitted that since the announcement had been cancelled in January 2009, the Record Control Schedule would set destruction in January 2011, not 2010.

## ARGUMENT

The doctrine of spoliation of evidence includes two sub-categories of behavior: the deliberate destruction of evidence and the simple failure to preserve evidence. *Battocchi v. Washington Hosp. Center*, 581 A.2d 759 (D.C. 1990)(quoting *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1134 (7th Cir. 1987); *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 587 F.Supp. 180, 190 (D.D.C.), modified, 593 F.Supp. 388, aff'd, 746 F.2d 816 (1984)). The duty to preserve material evidence "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know  that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)(quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed. 1990)).

Courts have held that the spoliation inference is not limited to showing that an employer destroyed records in bad faith. To the contrary, [a] spoliation inference [is] appropriate in light of the duty of preservation notwithstanding the fact that the destruction was negligent. *Grosdidier v. Broad. Bd. of Governors* (D.C. Cir. 2013).  The spectrum of

8

sanctions includes an "adverse inference" jury instruction, prohibition of expert testimony, dismissal and monetary sanctions in the form of punitive damages.  Adverse inferences from the destruction of documents have both an evidentiary and a punitive rationale.  The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document.   In essence, the inference is akin to an admission by conduct of the weakness of one's own case.  *Battocchi v. Washington Hosp. Center*, 581 A.2d 759 (D.C. 1990)(quoting *Nation-wide Check Corp. v. Forest Hills Distributors,* 692 F.2d 214, 218 (1st Cir. 1982)).

When the loss or destruction of evidence is not intentional or reckless, by contrast, the issue is not strictly "spoliation" but rather a failure to preserve evidence. The rule that a fact- finder may draw an inference adverse to a party who fails to preserve relevant evidence within his exclusive control is well established in this jurisdiction. *Battocchi v. Washington Hosp. Center*, 581 A.2d 759 (D.C. 1990)(quoting *Aetna Casualty & Sur. Co. v. Smith, supra,* 127 A.2d at 559; *Hartman v. Lubar,* 49 A.2d 553, 556 (D.C. 1946); *Tendler v. Jaffe, supra,* 203 F.2d at 19; *Washington Gas Light Co. v. Biancaniello,* 183 F.2d 982, 985 (1950); *Fidelity & Deposit Co. v. Helvering,* 112 F.2d 205, 211 (1940). Like the spoliation rule, it derives from the common sense notion that if the evidence was favorable to the non-producing party's case, it would have taken pains to preserve and come forward with it. *International Union (UAW) v. NLRB,* 459 F.2d 1329, 1335-36, 1338 (1972); *Washington Gas Light Co. v. Biancaniello, supra,* 183 F.2d at 985.

As early as July 2010, defendant knew that Ms. Vasser was raising an issue regarding

9

her past non-selections. Whether or not Ms. Vasser could assert an actual claim for those non-selections, as even the EEO counselor noted, the non-selections were probative of intent, motive and pretext. Specifically, these documents are relevant to Alfonso Batres's credibility and the real reasons for Ms. Vasser's non-selections to any of the Bay Pines management positions from 2008 until 2011.[1] The duty to preserve relevant documents and evidence is triggered by a reasonably foreseeable Department investigation. *Gerlich, et al. v. U.S. Dept. of Justice, et al.*, No. 09-5354 (D.C. Cir. Mar. 29, 2013). Defendant has been represented by counsel since at least October 2010. By November 2010, Ms. Vasser's counsel was specifically demanding these documents from agency counsel, well before documents under vacancy announcement 08-351 would have been destroyed pursuant to a so-called records destruction schedule. Defendant has averred absolutely no representations of its efforts to preserve the documents nor the circumstances of their purported destruction. Most important, in light of Ms. Seybold's admission that her declaration claiming that the 08-351 "would have been destroyed in 2010" was untrue, the paucity of facts proffered by defendant to explain the non-production of these documents raises substantial questions about the veracity of defendant's explanations, such as they are, and whether the records have indeed been destroyed. Defendant clearly breached its duty to preserve documents that are probative to the issues presented in this case, or otherwise produce them and accordingly, it is appropriate for the court to make inferences adverse to Defendant's claims and defenses.

It is clear that courts have broadly interpreted the authority granted by Rule 37(b)(2) to permit sanctions for failure to obey a wide variety of orders intended to "permit

---

[1] Significantly, defendant has never proffered a sworn statement from John Walker, at the investigative, administrative or federal court stages of this litigation.

discovery." *Hathcock v. Navistar Int'l Transp. Co.*, 53 F.3d 36, 40 (4th Cir. 1995)(a trial court has the authority to impose a default judgment as a sanction for violating a Rule 16 scheduling order, pursuant to Rule 37(b)(2); stating "we agree with the basic premise that a default sanction can, under certain circumstances, be an appropriate response to a violation of a Rule 16 order. After all, the express terms of Rule 37 permit a trial court to impose sanctions when a party fails to obey an order to provide or permit discovery.")

Subject to a finding of gross indifference to, or reckless disregard for the relevance of the evidence to a possible claim, the trial court must submit the issue of lost evidence to the trier of fact with corresponding instructions allowing an adverse inference. *Battocchi* at 767. Additional sanctions should include, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," *including* at the summary judgment stage. Fed. R. Civ. P 37 (c)(1) The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation to redress conduct "which abuses the judicial process."   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process).

The integrity of the judicial process must be protected by the courts because, "[e]ven the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993) (recognizing "that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of

the process, the court has the inherent power to dismiss the action").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges this honorable court to impose appropriate sanctions against Defendant for the intentional, reckless and/or negligent spoliation of material evidence, including precluding summary judgment, imposing an adverse finding of fact, adverse jury instruction and attorney fees.

Respectfully submitted,

/s/ Lisa Alexis Jones
Lisa Alexis Jones, PLLC
One Rockefeller Plaza
10th Floor
New York, N.Y.
10020
(646) 756-2967
(888) 755-6778 Fax
ljones@lisaajones.com

*Counsel for Plaintiff*

Dated:          April 18, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2017, I caused to be sent, via electronic mail a copy of the foregoing Motion for Spoliation of Evidence and Sanctions to:

John Truong, Esq.
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

*/s/ Lisa Alexis Jones*
Lisa Alexis Jones