**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| VIVIAN VASSER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-cv-00185-RC |
| | ) | |
| DAVID SHULKIN | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF VIVIAN VASSER'S REPLY MEMORANDUM IN SUPPORT OF HER
MOTION FOR SPOLIATION OF EVIDENCE AND SANCTIONS**

By its opposition to Ms. Vasser's Motion for Spoliation of Evidence and Sanctions, defendant does not contest that this Court Ordered it to produce documents relating to Vacancy No. 08-351 that Ms. Vasser requested in her Document Requests 10, 11, 12, and 14-16 while its motion to dismiss was pending. Nor does defendant dispute that, according to it, the first time it bothered to even look for these documents during the course of the civil litigation was when the Court ordered them produced. Instead, defendant posits a number of excuses for its failure to preserve and/or produce documents associated with the vacancy announcement, none of which is remotely availing. Put simply, Ms. Vasser has established by a preponderance of evidence that defendant was either negligent, grossly negligent, reckless and/or intentional in its failure to preserve and maintain evidence relating to prior recruitment opportunities denied to Ms. Vasser.

**BACKGROUND**

It is undisputed that in its 35 plus year history, RCS had hired only one African-American female as a regional or deputy regional manager. Indeed, that sole African-American woman ever hired by Dr. Al Batres as a regional manager, Norma King-Joyner, was the target of an

1

adverse employment action by him, leading to her filing and settling a race and gender discrimination complaint against him. Deposition Testimony of Denis McNamara, incorporated herein as Plaintiff's Exhibit 9, pp. 9-11. Thereafter, Dr. Batres vowed that he would *never* hire another African-American woman as a regional or deputy regional manager. Deposition Transcript of Joann Thompson, incorporated herein as Plaintiff's Exhibit 10.

On February 28, 2008, John Walker reached out to Ms. Vasser to recruit her for an upcoming opening as his deputy regional manager in Bay Pines, Florida. Telephone Message and Notes, February 28, 2008, incorporated herein as Plaintiff's Exhibit 11.[1] It is further uncontested that in September 2008 a vacancy announcement was issued and that Ms. Vasser applied for the deputy regional manager position in Bay Pines, Florida under Vacancy Announcement No. MPA 08-351.

At some point during the recruitment process, Walker called Clarence Slaughter, one of only three African-American regional managers at RCS, to get and received a positive recommendation for Ms. Vasser. Declaration of Clarence Slaughter incorporated herein as Plaintiff's Exhibit 12. ¶4.

From September 25, 2008 to October 3, 2008, Ms. Vasser received and placed about eight calls to Mr. Walker's cell phone to discuss the vacancy and her application. Telephone logs, incorporated herein as Plaintiff's Exhibit 13.  On September 29, 2008, Ms. Vasser traveled to Florida using her own funds to be interviewed for the position with Mr. Walker. Trip Itinerary, incorporated herein as Plaintiff's Exhibit 14. Upon her arrival to Florida that morning, Ms. Vasser exchanged at least three calls with Mr. Walker. Ex. 13.  Since she was to be in Florida,

---

[1] Ms. Vasser attended a team leader conference in Mr. Walker's region in May 2008, two months *after* receiving the call from him in February to discuss the upcoming opening. Trip Itinerary, incorporated herein as Plaintiff's Exhibit 16.

Ms. Vasser invited her colleague and friend, Elna Davis, to meet her in Florida for a mini-vacation. Declaration of Elna Davis, incorporated herein as Plaintiff's Exhibit 15. On or about September 30, 2008, Ms. Vasser interviewed for the position with Mr. Walker. ECF 61-7, p. 2.

The day after the interview, Ms. Davis flew to Florida to meet Ms. Vasser and the two friends started a day of shopping. While shopping, Ms. Vasser received a call on her cell phone from Mr. Walker. Defendant's ECF 61-7, p. 2. Ms. Vasser placed the phone so Ms. Davis could listen, and Mr. Walker advised Ms. Vasser that he was going to recommend her selection, was sending the paperwork to Batres and encouraged her to begin looking for a residence in Florida. Defendant's Id, pp. 63-64, 70; Plaintiff's Ex. 15. Ms. Vasser was very excited, and she and Ms. Davis started looking at apartments in the near the VA campus. Id.

Thereafter, Walker called Clarence Slaughter to tell him he had selected Ms. Vasser for the position. Ex. 12 at ¶5.

It is undisputed that on April 27, 2009, another announcement for the GS-13 deputy regional manager position in Bay Pines was issued by the Agency under vacancy announcement 2009-1996-AA. Ms. Vasser applied and was certified as eligible for promotion. On June 9, 2009, Mr. Walker told Ms. Vasser that Dr. Batres would never approve Ms. Vasser's promotion and on August 17, 2009, Wayne Plummer, a white male candidate with substantially less experience than Ms. Vasser, was selected as the new deputy regional manager without any interviews.

It is undisputed that during the course of EEO counseling protesting her non-selection to the 2009-1996-AA announcement, Ms. Vasser raised issues with her prior non-selections, including MPA 08-351. The EEO counselor, Randall Mitchell, determined that this information was "background information" as evidence of "motive." EEO Counselors Report, incorporated herein as Plaintiff' Exhibit 17. Accordingly, the EEO investigator, Brenda Smith, requested that

the agency to provide verified responses to Ms. Vasser's claim relating to 08-351 on two occasions. Plaintiff's Ex. 2; Correspondence from Brenda Smith, incorporated herein as Plaintiff's Exhibit 18.[2]

Both Batres and Rachelle Seybold, a Human Resource specialist stationed in Bay Pines, Florida, provided affidavits to Ms. Smith and provided sworn responses to Ms. Vasser's claim that she had been selected for the 08-351 position that was subsequently cancelled. According to Ms. Seybold, she was not the primary HR specialist for the vacancy announcement but had been tasked with assisting with Mr. Plummer's pre-employment paperwork. Deposition Transcript of Rachelle Seybold, incorporated herein as Plaintiff's Exhibit 19, at 27, 31, 37-39. Nevertheless, she was tasked with providing the affidavit in 2010 and reviewed the file stored in the Bay Pines Human Resources office in order to respond to Ms. Smith's questions. Ex. 19 at 40-41, 53-54.

According to Ms. Seybold, the 08-351 merit promotion process was governed by VA Handbook 5005. Id at 17. The "Merit Promotion File" included, among other documents, the job description, vacancy requisition, KSA's, candidate applications, certificate of eligibles, a referral certificate from selecting official. Id at 18-19 35, 37. The announcement for 08-351 was pre-USA Staffing that centralized recruitment. Id at 32. In 2008, HR personnel received merit promotion documents, including documents from management and candidate applications, via email. Typically, Ms. Seybold would print out all documents received electronically, including email communications from management, and place them in the hard copy file stored in HR and HR would advise each management service to maintain copies. Id at 43. Ms. Seybold did not know where electronic copies of any documents were stored. Id at 33. Neither did Ms. Seybold

_____

[2] The declaration submitted by defendant on behalf of Winston Johnson that Ms. Vasser's non-selection under Vacancy Announcement 08-351 is materially misleading when it states that Vacancy Announcement 08-351 was not investigated.

know of any policies relating to the deletion of electonically-stored information nor what would happen to electronically-stored candidate applications received via USAJobs. Id. at 33-34.

According to Seybold, when a complaint of discrimination is lodged, the file is removed from the general filing system and placed in a "retention file." Id at 46. Notwithstanding a policy to destroy documents after two years, Ms. Seybold admitted that there did not exist any formal "purge" practice, tickler system or other standardized process for destroying HR documents. Id. at 48-49. Rather, Ms. Seybold described a haphazard process where records were not always purged at the two-year point and no record was kept of when, how and by whom documents were purged. Id at 92.

Ms. Seybold agreed, however, that though hiring offers were not official until sent from HR, selecting officials would inform successful applicants before an official HR offer is conveyed. Id. at 45-46.

After Ms. Vasser requested a hearing before the Equal Employment Opportunity Commission relating to her first EEO complaint under vacancy announcement 2009-1996-AA, Ms. Vasser propounded Interrogatories and Document Production Requests on defendant through assigned agency counsel. Plaintiff's Exhibit 3. By those requests, Ms. Vasser demanded interrogatory responses relating to each of the prior non-selections, including 08-351, as well as production relevant documents. Id at Interrogatory Nos. 2, 14, 15, 16, 17; Request for Documents Nos. 14, 15 and 16. Ms. Seybold assisted agency counsel in responding to this discovery. Ex. 19 at 85. Ms. Seybold did not recall any effort to preserve documents related to the vacancy announcement. Id. at 87.

In her civil complaint, Ms. Vasser again raised issues relating to the prior non-promotions. On or about March 19, 2015, Ms. Vasser propounded discovery requests on

defendant. By those requests, Ms. Vasser once again demanded information and documents relating to the prior non-selections, including 08-351. Plaintiff's Exhibit 6, Interrogatory Nos. 10, 11, 12, 13; Document Request Nos. 2, 10, 1112, 14, 16. Defendant objected to providing any information regarding the prior non-selections, including 08-351, because claims relating to those announcements were then the subject of a motion to dismiss. Defendant never asserted that documents relating to those announcements no longer existed.

Ms. Vasser protested defendant's objections in a discovery letter dated January 4, 2016. Plaintiff's Exhibit 7. Finally, Ms. Vasser raised the issue of production of these documents with the Court on September 28, 2016. Again, defendant did not proffer to the Court that the documents no longer existed. The Court granted Ms. Vasser's demand for these documents and ordered the government to produce them to Ms. Vasser.

On or about November 10, 2016, instead of producing any of the subject documents, defendant served three sworn generic declarations from three different VA employees, including Rachelle Seybold. Each declaration was nearly identical to the other and, although the declarations were prepared just a few months prior to her deposition, Ms. Seybold did not recall even preparing her declaration. Ex. 19 at 88. Moreover, Ms. Seybold's declaration does not assert that the documents had *actually* been destroyed, the dates of their destruction nor by whom. Id.

On the contrary, during her April 7, 2017, deposition, Ms. Seybold recalled that she searched the HR file cabinets. Id. at 88-89. Ms. Seybold did not conduct a search of electronically-stored files, the Regional Counsel's office, the United States Attorney's Office, the national or local RCS offices the Office of Employee Relations (an office that has played a role in assisting defendant's discovery production). Id. at 90-91, 94. Ms. Seybold admitted that

she did not know when documents were destroyed or even if they were actually destroyed. Id. at 92.

## ARGUMENT

### VIVIAN VASSER HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE DEFENDANT'S FAILURE TO PRESERVE EVIDENCE NOT ONLY POTENTIALLY BY DIRECTLY RELEVANT TO HER CLAIMS

The duty to preserve material evidence "arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001)(quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed. 1990)). Once a party anticipates that it will be subject to litigation, the party has a duty to preserve any evidence that may be potentially relevant. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1481 (D.C. Cir. 1995) (a party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant ... if it knew the destruction or alteration of those documents would prejudice [its opponent]"); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a `litigation hold' to ensure the preservation of relevant documents."). The party that fails to preserve evidence may justly be accused of spoliation: "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" — and find itself the subject of sanctions. *D'Onofrio v. SFX Sports Grp., Inc.*, No. 06-687, 2010 WL 3324964, at *5 & n. 5 (D.D.C. Aug. 24, 2010)).

Issue-related sanctions are targeted to remedy the precise evidentiary issue; for example, a party who fails to retain evidence may be precluded from introducing types of evidence, or the jury may draw an adverse inference from the missing evidence. *See Shepherd*, 62 F.3d at 1478. The party seeking sanctions bears an evidentiary burden that is calibrated to "ensure that the gravity of the sanction corresponds to the misconduct." *Shepherd*, 62 F.3d at 1479. Thus, a party seeking an issue-related sanction need only put forth a preponderance of the evidence. Id. at 1477-78. In addition, even the negligent destruction of relevant evidence may warrant issue-related sanctions. *Chen v. District of Columbia*, 839 F.Supp.2d 7, 12 (D.D.C. 2011).

An issue-related sanction, such as an adverse inference, is warranted if:

(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Mazloum v. D.C. Metro. Police Dep't*, 530 F.Supp.2d 282, 291 (D.D.C. 2008).

Here, defendant cannot dispute that it was on notice that the Merit Promotion and other records pertaining to the 08-351 vacancy announcement were "potentially relevant" to the litigation. *Shepherd*, 62 F.3d at 1481. After all, the EEO investigator thought so when she requested sworn information from Batres and Seybold about Ms. Vasser's claim that Mr. Walker had referred her selection to Batres for approval and she still was not promoted. Defendant was further put on notice during the course of the EEOC administrative proceedings when Ms. Vasser requested discovery into the vacancy announcement. More to the point, in this civil litigation, Ms. Vasser pled this issue in her civil complaint and requested discovery into this announcement. Finally, this Court refused to stay discovery into this vacancy announcement

while defendant's motion to dismiss was litigated before specifically ordering defendant to produce these records. Put simply, plaintiff gave defendant *ample* notice that she would base her claims in part on the curious non-selection to the Bay Pines deputy position under 08-351 and, accordingly, defendant knew or should have known that these records would have been relevant. *More v. Snow*, 480 F.Supp.2d 257, 274-75 (D.D.C. 2007). In short, any contention by defendant that it was not put on notice that these documents were potentially relevant must be rejected.

Rather, defendant hangs its hat on the notion that Ms. Vasser never identified any documents that might have been improperly destroyed. This argument is baseless. After all, the merit promotion process is and the documents associated with it are standardized. What is contained in a "Merit Promotion File" is not a secret. Since 2010, Ms. Vasser has been seeking discovery into the identity and documents relating to the candidates for the position and "Any and all documents which support, evidence or otherwise pertain to the hiring process for the employment vacancies under Vacancy Announcement . . . 08-351. Plaintiff's Ex. 3. In this case, Ms. Vasser was even more specific:

> REQUEST FOR DOCUMENTS NO. 10:   Any and all documents which support, evidence, relate or otherwise pertain to the hiring process for the employment vacancies:    1) 07-B6-301; 2) 08-048;  3) MPA-08-05;  4) MPA-2007-8515; 5) MPA-08-351; 6) 2009-1996-AA;  7) RM-Towson, Maryland 1B; 8) 417114; 9) 454888; 10) NY-11-RNS-422068/535157.

> REQUEST FOR DOCUMENTS NO. 11:   The complete application file, including but not limited to, any documents, records, memoranda, notes, or computer printouts, of each employee who was not hired or promoted under the vacancy announcements:    1) 07-B6-301; 2) 08-048;  3) MPA-08-05;  4) MPA-2007-8515; 5) MPA-08-351; 6) 2009-1996-AA;  7) RM-Towson, Maryland 1B; 8) 417114; 9) 454888; 10) NY-11-RNS-422068/535157.

> REQUEST FOR DOCUMENTS NO. 12:   The complete application file, including but not limited to, any documents, records, memoranda, notes, or computer printouts, of each employee who was hired or promoted under  vacancy announcements:    1) 07-B6-301; 2) 08-048;  3) MPA-08-05;  4) MPA-2007-

8515; 5) MPA-08-351; 6) 2009-1996-AA; 7) RM-Towson, Maryland 1B; 8) 417114; 9) 454888; 10) NY-11-RNS-422068/535157.

REQUEST FOR DOCUMENTS NO. 14:    Any and all documents generated, including all drafts of such documents, by the Delegated Examination Unit, Human Resources or any Human Resource Specialist of Defendant, including but not limited to position descriptions, vacancy announcements, certificates, certificates of eligible, job analysis, category rating forms, category rating summaries, performance plans, organizational charts, audits, notices of audits, control sheets, surveys, candidate lists, recruitment checklists, recruitment packages, rating criteria, rating criteria summaries benchmarks, benchmark reports, requests for extensions, extension approvals, extension denials, which support, evidence, related or otherwise pertain to the hiring process for the employment vacancies under Vacancy Announcements: 1) 07-B6-301; 2) 08-048; 3) MPA-08-05; 4) MPA-2007-8515; 5) MPA-08-351; 6) 2009-1996-AA; 7) RM-Towson, Maryland 1B; 8) 417114; 9) 454888; 10) NY-11-RNS-422068/535157.

REQUEST FOR DOCUMENTS NO. 15:    The complete personnel file, including but not limited to, any documents, records, memoranda, notes, or computer printouts, of Alfonso Batres.

REQUEST FOR DOCUMENTS NO. 16:    All electronically stored information, including but not limited to electronic mail, letters, memorandum, and reports, position descriptions, vacancy announcements, certificates, certificates of eligible, job analysis, category rating forms, category rating summaries, performance plans, organizational charts, audits, notices of audits, control sheets, surveys, candidate lists, recruitment checklists, recruitment packages, rating criteria, rating criteria summaries benchmarks, benchmark reports, requests for extensions, extension approvals, extension denials, which support, evidence, related or otherwise pertain to the hiring process for the employment vacancies under Vacancy Announcements: 1) 07-B6-301; 2) 08-048; 3) MPA-08-05; 4) MPA-2007-8515; 5) MPA-08-351; 6) 2009-1996-AA; 7) RM-Towson, Maryland 1B; 8) 417114; 9) 454888; 10) NY-11-RNS-422068/535157 from the following custodians.

Plaintiff's Ex. 6.  Put simply, defendant had every reason to believe since at least 2010 what records needed preserving and that Ms. Vasser would be seeking them, triggering its duty to preserve. *See* Shepherd, 62 F.3d at 1481.

Defendant next argues that discovery in this case disputes Ms. Vasser's clear, persistent and long-standing contention that Walker referred her name for approval to Dr. Batres, which was denied and a less-qualified white male was promoted in her stead.[3] Despite Ms. Vasser's clear and forthright sworn affidavits and deposition testimony, the only evidence defendant can point to that disputes Ms. Vasser's contention is a declaration submitted by John Walker *after* the close of discovery and solely for the purpose of defending this spoliation motion.[4] Yet, in offering this post-discovery, belated and, Ms. Vasser submits, false, statement by John Walker, defendant makes Ms. Vasser's point. The full merit promotion file would resolve this question of fact, and defendant's failure to preserve it or otherwise produce it impermissible inures to its benefit and substantially prejudices Ms. Vasser. Cast in this light, the supposedly destroyed evidence is not harmless because the adverse inferences arising from a sanction against defendant would directly rebut defendant's claim relating to Wayne Plummer's selection and raise a genuine issue of fact regarding the justifications for his selection and Ms. Vasser's non-selection. *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 28 (D.C. Cir. 2013).

Defendant complains, though, that evidence surrounding Ms. Vasser's non-selection for the 08-351 position is irrelevant to the remaining claims in this case. Defendant's wishful thinking must be rejected. After all, the record evidence is clear that Dr. Batres had orchestrated at least one recruitment, the regional manager position in Bay Pines, Florida that Walker eventually left, that resulted in the denial of Ms. Vasser's opportunity to compete for the position. It is in this light that Wayne Plummer's eventual promotion into the deputy regional manager

---

[3] Defendant does not apparently contest that Ms. Vasser applied for the position and made a certificate of eligibles.

[4] Significantly, Elna Davis, Clarence Slaughter, not to mention Ms. Vasser's contemporaneous travel and phone records, contradict Mr. Walker's sworn statement.

position in 2009 must be evaluated and evidence that Dr. Batres undermined her Ms. Vasser's efforts to compete to the benefit of Mr. Plummer is unquestionably relevant to the ultimate question of whether Vivian Vasser was denied an employment benefit on the basis of her race and gender. Documents, including the certificate of eligible's and the selection sheet is potentially "concrete evidence" supporting the verified accounts of Ms. Vasser, Mr. Slaughter and Ms. Davis. It is not speculative or the product of a "fertile imagination." See Defendant's Motion, p. 11.

On this score, defendant's characterization that Ms. Vasser's supported claim that Mr. Walker recommended her for the position that Dr. Batres refused to support as "fantastical" is particularly curious given the facts of this case. After all, we know that Dr. Batres and his cabal provided Sarita Figueroa with substantial assistance that impeded Ms. Vasser's ability to compete for the position, then lied about it to the Office of the Inspector General. In addition, the record supports Ms. Vasser's contention that a selecting official will sometimes advise a candidate of her selection before an "official" offer by HR is made.

Finally, defendant protests that there is no evidence of a "culpable state of mind" in its failure to preserve the Merit Promotion File for 08-351 vacancy announcement. This specious argument is devoid of any merit. As an initial matter, defendant has not actually proffered that the documents *have* been destroyed. Rather, Seybold's affidavit only proffers that such documents were *subject* to be destroyed under a document retention policy. There is no record evidence that the documents were actually destroyed, *when* they were destroyed, if at all, and by whom. More to the point, Ms. Seybold describes a destruction practice that is haphazard at best. Put simply, Ms. Vasser is not at all convinced that these documents have actually been destroyed.

Nor can it be said that defendant's search for any copies of the merit promotion file was remotely exhaustive. There is no evidence that a search was conducted of any locations outside of local HR file cabinet, including agency counsel's office, he US Attorney's Office, Dr. Batres' office, John Walker's former office, the Office of Employee Relations that assisted defendant in its discovery production or electronically-stored documents.

Equally relevant to defendant's state of mind is its admission that it made *no* effort to search and preserve these "potentially relevant" documents after Ms. Vasser filed suit and pled facts relating to the 08-351 promotion process or after the Court refused to stay discovery into claims that were the subject of the motion to dismiss. Here, the Chief of the service, as well as HR, both of which were in control of the relevant documents were on notice that the 08-351 Vacancy Announcement was potentially relevant when Dr. Batres and Ms. Seybold both provided verified responses to Ms. Vasser's claims on this non-selection, not once but twice each.

Defendant suggests that the absence of a motion to compel these documents by Ms. Vasser during the administrative proceedings somehow absolved it of its duty to preserve evidence. Defendant's recitation of the procedural history of the administrative proceedings in, however, erroneous. In fact, Ms. Vasser *did* appeal the dismissal of the previously dismissed claims on November 15, 2010. See Motion, incorporated herein as Plaintiff's Exhibit 20. By January 2011 that motion was still pending before the Commission [See Joint Motion, incorporated herein as Plaintiff's Exhibit 21, ¶4], and in a January 11, 20011 settlement demand, Ms. Vasser reiterated her position that the other non-promotions, whether or not they were actual independent claims for relief, would be admissible to "rebut the proffer that the Agency possessed a legitimate basis for its non-promotion of Ms. Vasser. Letter to LeTonya Moore,

incorporated herein in pertinent part as Plaintiff's Exhibit 22. By March 2011, that motion remained pending [Motion to Stay, incorporated herein as Plaintiff's Exhibit 23, ¶2] and Ms. Vasser's first administrative proceeding remained dormant until the investigation into the second EEO complaint relating to the Bay Pines Regional Manager position was completed and eventually consolidated with the first administrative case. Eventually, Ms. Vasser withdrew her request for a hearing before the EEOC and a ruling relating to Ms. Vasser's appeal regarding her prior non-selections remained undecided.

In short, defendant has since 2010 obstructed Ms. Vasser's consistent demands for evidence that in the eleventh-hour now claims was "subject" to destruction at some unknown date, place and time. Defendant's temerity and obstruction must not be rewarded.

Respectfully submitted,

/s/ Lisa Alexis Jones
Lisa Alexis Jones, PLLC
One Rockefeller Plaza
10th Floor
New York, N.Y. 10020
(646) 756-2967
(888) 755-6778 Fax
ljones@lisaajones.com

*Counsel for Plaintiff*

Dated:      June 23, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of June 2017, I caused to be sent, via electronic

mail a copy of the foregoing Reply in Support of Vivian Vasser's Motion for Spoliation of

Evidence and Sanctions to:

John Truong, Esq.
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

> */s/ Lisa Alexis Jones*
> Lisa Alexis Jones