**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| VIVIAN VASSER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0185 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 66, 67, 77 |
| | : | | |
| DAVID SHULKIN, Secretary, | : | | |
| United States Department of Veterans Affairs | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S
MOTIONS FOR LEAVE TO FILE UNDER SEAL

## I. INTRODUCTION

This case involves an employment discrimination action brought by Plaintiff, Vivian

Vasser, against David Shulkin in his capacity as Secretary of the United States Department of

Veterans Affairs ("VA"). Ms. Vassers claims that the VA discriminated and retaliated against

her when it failed to promote her to a position of either the Deputy Regional Manager or

Regional Manager for the VA's Readjustment Counseling Service in Region 3A, headquartered

in Bay Pines, Florida. This matter now comes before the Court on the Secretary's Motion for

Summary Judgment ("Def.'s Mot."), ECF No. 66. For the reasons stated below, that motion is

denied.

## II. BACKGROUND[1]

Ms. Vasser, an African-American woman, is a licensed social worker who has worked for the VA in its Readjustment Counseling Service ("RCS") since the early 1990s. *See* Def.'s Resp. Pl.'s Counter-Statement Material Facts in Dispute ("Def.'s Resp. Pl.'s Counter-SMF") ¶ 11, ECF No. 76-1; Pl.'s Counter-Statement Material Facts in Dispute ("Pl.'s Counter-SMF) ¶¶ 1, 11, ECF No. 72-18; Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Ex. 10, ECF No. 72-2. RCS is a division of the Veterans Health Administration within the VA and is responsible for providing counseling and psychosocial services to returning combat veterans and their family members primarily through individual "Vet Centers." *See* 38 U.S.C. §§ 1712A, 7309(a). RCS is divided into seven regions, each of which is overseen by a Regional Manager with assistance from a Deputy Regional Manager and Associate Regional Managers. Pl.'s Counter-SMF ¶ 5; Def.'s Resp. Pl.'s Counter-SMF ¶ 5. These Regional Managers report to RCS's Chief Officer, who retains responsibility for all Regional Offices and Vet Centers nationwide. Pl.'s Counter-SMF ¶ 7; Def.'s SMF ¶ 7. At all times relevant to this suit, RCS's Chief Officer was Dr. Alfonso Batres. Pl.'s Counter-SMF ¶ 8; Def.'s Resp. Pl.'s Counter-SMF ¶ 8

Ms. Vasser first started working at RCS as a clinical social worker in 1993 and eventually rose to the rank of Supervisory Social Worker/Team Leader ("Team Leader"), a position that she has held since January 2000. *See* Pl.'s Opp'n, Ex. 10. As a Team Leader, Ms. Vasser was responsible for hiring, managing budgets, and supervising the care of veterans at the Eastside Vet Center in Maple Heights, Ohio. *See* Def.'s Resp. Pl.'s Counter-SMF ¶¶ 14–15; Pl.'s Counter-SMF ¶¶ 14–15. In addition to her experience within RCS, Ms. Vasser has also held various

---

[1] Unless otherwise noted, this section recounts only facts that the parties do not dispute or facts substantiated by the record.

positions involving behavioral health and social work as an officer in the U.S. Army Reserves. *See* Pl.'s Opp'n, Ex. 10. Between 2007 and 2011, Ms. Vasser vigorously pursued promotion to several high-level positions within RCS, including positions as RCS Deputy Regional Manager and RCS Regional Manager. See Pl.'s Counter-SMF ¶¶ 52, 60, 64, 123, 162-63; Def.'s Resp. Pl.'s Counter-SMF ¶¶ 52, 60, 64, 123, 162-63.

## A. Deputy Regional Manager Position

Beginning in 2008, RCS began seeking a new Deputy Regional Manager for Region 3A, headquartered in Bay Pines, Florida.[2] *See* Pl.'s Opp'n, Ex. 4, ECF No. 72-1. The position had been left vacant after John Walker, the former Deputy Regional Manager, was promoted to Regional Manager in 2007. Def.'s Statement Material Facts ("Def.'s SMF") ¶ 11, ECF No. 66-1; Pl.'s Resp. Def.'s Statement Material Facts ("Pl.'s Resp. Def.'s SMF") ¶ 11, ECF No. 72-18. On August 29, 2008, the VA solicited applications for the Deputy Regional Manager position under Announcement Number MPA-08-351, *see* Pl.'s Opp'n, Ex. 4, and Ms. Vasser submitted an application, Pl.'s Counter-SMF ¶ 64. Although the Secretary denies her account, Ms. Vasser claims that not only did she apply for the position, but that Mr. Walker interviewed her and recommended that Dr. Batres select her for the job. Compare Pl.'s Counter-SMF ¶¶ 64–74, with Def.'s Resp. Pl.'s Counter-SMF ¶¶ 64–74. Nevertheless, the parties agree that on January 2009, Mr. Walker canceled the vacancy announcement without any applicant receiving a formal offer. *See* Decl. John Walker ("Walker Decl.") at Ex. 1, ECF No. 66-3; Pl.'s Counter-SMF ¶ 82; Def.'s Resp. Pl.'s Counter-SMF ¶ 82.

---

[2] Region 3A encompasses Florida, North Carolina, South Carolina, Georgia, Puerto Rico, and the U.S. Virgin Islands. Def.'s SMF ¶ 10; Pl.'s Resp. Def.'s SMF ¶ 10.

A few months later, in April 2009, the same position was re-advertised under Announcement Number 2009-196-AA. *See* Def.'s Mot., Ex. 1, ECF No. 66-6; Pl.'s Counter-SMF ¶ 86; Def.'s Resp. Pl.'s Counter-SMF ¶ 86. Ms. Vasser once again applied for the position and was ultimately found to be one of four eligible candidates. Def.'s SMF ¶ 17; Pl.'s Resp. Def.'s SMF ¶ 17. This time, even though no interviews were conducted, Mr. Walker recommended, and Dr. Batres approved, the selection of a white man named Wayne Plummer who had, at that time, been serving as a Team Leader in Region 3A for a little under two years. *See* Walker Decl. ¶¶ 10, 12; Def.'s Mot., Ex. 2, ECF No. 66-6.

On October 30, 2009, Ms. Vasser became aware of her non-selection and, shortly thereafter, filed an informal complaint of discrimination with the Office of Resolution Management. Pl.'s Counter-SMF ¶ 121; Def.'s Resp. Pl.'s Counter-SMF ¶ 121. She later filed a formal complaint on February 17, 2010. Pl.'s Counter-SMF ¶ 121; Def.'s Resp. Pl.'s Counter-SMF ¶ 121.

## B. Regional Manager Position

In August 2010, Mr. Walker, the then-Regional Manager for Region 3A, retired from the VA. Walker Decl. ¶ 4. That fall, RCS reached out to Rachelle Seybold, a Senior Human Resource Specialist, to fill that vacancy. Def.'s SMF ¶ 38; Pl.'s Resp. Def.'s SMF ¶ 38. Ms. Seybold received certain information from RCS in Washington, D.C., such as the position description, area of consideration, and the knowledge, skills, and abilities requirements that were to be used in advertising the position vacancy. Def.'s SMF ¶ 39; Pl.'s Resp. Def.'s SMF ¶ 39. Using this information, Ms. Seybold developed Vacancy Announcement Number 417114 and posted the announcement to an official federal employment website. *See* Def.'s SMF ¶¶ 40–41; Pl.'s Resp. Def.'s SMF ¶¶ 40–41. The position, as listed in the Announcement, was for a GS-14

Regional Manager and was open to all current, permanent VA employees nationwide.  *See* Def.'s SMF ¶ 41; Pl.'s Resp. Def.'s SMF ¶ 41; Def.'s Mot., Ex. 5.  The VA accepted applications for that position from December 2010 through January 2011.  *See* Def.'s Mot., Ex. 5, ECF No. 66-6. In total, eleven candidates applied, five of whom the VA deemed qualified and placed on a certificate of eligible candidates, including Ms. Vasser.  Def.'s SMF ¶¶ 46–48; Pl.'s Resp. Def.'s SMF ¶¶ 46–48.  Nevertheless, Dr. Batres did not make a selection based on that certificate. Def.'s SMF ¶ 53; Pl.'s Resp. Def.'s SMF ¶ 53

On March 30, 2011, RCS advertised the Regional Manager position a second time, this time under Vacancy Announcement Number 454888.  Pl.'s Counter-SMF ¶ 162; Def.'s Resp. Pl.'s Counter-SMF ¶ 162.  This announcement, like the first, was advertised as a GS-14 position, but unlike the first announcement, this one was open to all U.S. Citizens, not just VA employees. *See* Def.'s SMF ¶ 59; Pl.'s Resp. Def.'s SMF ¶ 59; Def.'s Mot., Ex. 8, ECF No. 66-7.  The VA accepted applications from March 30, 2011 through April 6, 2011 and, in all, 113 people applied. *See* Def.'s SMF ¶¶ 60–61; Pl.'s Resp. Def.'s SMF ¶¶ 60–61; Def.'s Mot., Ex. 8.  Of those 113 applicants, five were placed on the certificate of eligibles, including Ms. Vasser.  *See* Def.'s SMF ¶¶ 60–61; Pl.'s Resp. Def.'s SMF ¶¶ 60–61.  Again, however, Dr. Batres did not make a selection based on the certificate.  *See* Def.'s SMF ¶ 65; Pl.'s Resp. Def.'s SMF ¶ 65.

Ultimately, Dr. Batres selected Sarita Figueroa after yet another vacancy announcement was issued.  At that time, Ms. Figueroa was a GS-15 Associate Director of the VA Caribbean Healthcare System.  *See* Def.'s SMF ¶ 76 Pl.'s Resp. Def.'s SMF ¶ 76.  Ms. Figueroa and Dr. Batres, however, were not unknown to one other.  Indeed, the VA Office of Inspector General ("OIG") later described Dr. Batres and Ms. Figueroa as "being close, personal friends, and [as]

having a deep-felt respect and admiration for one another." Def.'s Mot., Ex. 22 at ¶ 54, ECF No. 66-10; *see also* Pl.'s Opp'n, Ex. 55, ECF No. 72-10.

By April 2011, Ms. Figueroa had expressed to Dr. Batres that she was interested in returning to Florida. *See* Decl. Dr. Alfonso Batres ("Batres Decl.") ¶ 33, ECF No. 66-3; Pl.'s Counter-SMF ¶ 165; Def.'s Resp. Pl.'s Counter-SMF ¶ 165. On April 5, one day before the close of the second vacancy announcement, Dr. Batres asked Ms. Figueroa to call him. *See* Pl.'s Opp'n, Ex. 55. Although the substance of that conversation is unclear, on April 18, Ms. Figueroa emailed Dr. Batres to tell him she had contacted HR about applying for the Bay Pines Regional Manager position, but had missed the deadline to submit an application. Def.'s Resp. Pl.'s Counter-SMF ¶ 170; Pl.'s Counter-SMF ¶ 170; *see also* Pl.'s Opp'n, Ex. 29, ECF No. 72-5.

Though Dr. Batres was the formal selecting official for the position, much of the recruitment effort was performed by Greg Harms, Dr. Batres's administrative officer. *See* Def.'s Mot., Ex. 22 at ¶ 2; Pl.'s Counter-SMF ¶ 172; Def.'s Resp. Pl.'s Counter-SMF ¶ 172. By the summer of 2011, Mr. Harms was seeking advice from Denis McNamara, an RCS Human Resources Specialist/Consultant stationed in Milwaukee, Wisconsin, about whether Dr. Batres could laterally transfer Ms. Figueroa noncompetitively into the Bay Pines Regional Manager position at a grade of GS-14. Def.'s Resp. Pl.'s Counter SMF ¶ 177; Pl.'s Counter-SMF ¶ 177; Dep. Denis McNamara ("McNamara Dep.") at 76:3–16, ECF No. 72-13. Although Mr. McNamara was unsure, Wayne Davis, a Human Resources Officer, also stationed in Wisconsin, believed that such a transfer would be possible as long as Ms. Figueroa was qualified. Pl.'s Counter-SMF ¶ 179; Def.'s Resp. Pl.'s Counter-SMF ¶ 179. In July, Mr. Davis forwarded Ms. Figueroa's resume, along with the formal position description for Regional Manager to yet another HR Specialist named Theresa Lasota and asked her whether she considered Ms. Figueroa

qualified for the position. Def.'s Resp. Pl.'s Counter SMF ¶ 188; Pl.'s Counter-SMF ¶ 188; Pl.'s Opp'n, Ex. 28, ECF No. 72-5. The next day Ms. Lasota wrote to Mr. Davis stating that she would not qualify Ms. Figueroa for the position "at any grade level" because, not only did she "not possess the education requirements, she also [did] not have the experience required by the [position description]." Def.'s Resp. Pl.'s Counter SMF ¶¶ 189, 192; Pl.'s Counter-SMF ¶¶ 189, 192; Pl.'s Opp'n, Ex. 28. Mr. McNamara forwarded Ms. Lasota's comments to Mr. Harms and suggested that "[p]erhaps there is more work to do on this?" Pl.'s Opp'n, Ex. 28. Later, Mr. Davis expressed his belief that they still might be able to reassign Ms. Figueroa, but that they might need to adjust the position description. *See* McNamara Dep. at 91:20–92:5; Pl.'s Opp'n, Ex. 32, ECF No. 72-6.

In the meantime, however, the two previous certificates of eligible candidates were still outstanding. On July 22, 2011, Mr. McNamara emailed Mr. Harms, proposing that no one be selected under the outstanding certificates and that the position be reclassified as a GS-15 position and "either open the job under Merit Systems or seek a lateral placement of a top executive to that position." *See* Pl.'s Opp'n, Ex. 33, ECF No. 72-6. The ostensible purpose for the reclassification was to attract applicants with greater leadership experience than they had seen under the last two announcements. *See* Pl.'s Opp'n, Ex. 33. In his email, Mr. McNamara explained that Bay Pines was facing "unique circumstances" and that it "present[ed] the most difficult situation with regards to leadership." *See* Pl.'s Opp'n, Ex. 33. He did not, however, elaborate on what either the circumstances or difficulties were. *See* Pl.'s Opp'n, Ex. 33. Nevertheless, he suggested that this proposed course of action be shared with Dr. Batres and that they urge him to accept it. *See* Pl.'s Opp'n, Ex. 33. About two hours later, Mr. Harms emailed Ms. Seybold to inform her that Dr. Batres was returning the certificates without making a

selection.  *See* Def.'s Resp. Pl.'s Counter SMF ¶ 205; Pl.'s Counter-SMF ¶ 205; Pl.'s Opp'n, Ex. 34, ECF No. 72-6.

RCS then set out to rewrite the Bay Pines Regional Manager position description to reflect a GS-15 position.  Def.'s Resp. Pl.'s Counter-SMF ¶ 207; Pl.'s Counter-SMF ¶ 207. After the new position description was complete, Mr. Harms sent Ms. Figueroa a copy and Mr. Harms and Mr. McNamara then proceeded to help Ms. Figueroa tailor her resume for that newly described position.  *See* Def.'s SMF ¶ 80; Pl.'s Counter-SMF ¶¶ 213–14; Def.'s Resp. Pl.'s Counter SMF ¶ 213–14; Pl.'s Opp'n, Exs. 37–38; McNamara Dep. at 105:15–106:2.

Although the VA had previously been discussing the possibility of laterally transferring Ms. Figueroa into the Regional Manager position, the VA eventually decided to issue a new competitive announcement based upon a recommendation from Ms. Seybold.  *See* Dep. Gregory Harms ("Harms Dep.") at 123:11–22, 126:21–127:14, ECF No. 72-13.  Following this decision, Ms. Seybold began preparing a new vacancy announcement for public dissemination.  Def.'s Resp. Pl.'s Counter SMF ¶ 220; Pl.'s Counter-SMF ¶ 220.  On September 2, 2011, she asked Mr. Harms whether the area of consideration for the vacancy should be open to all RCS employees or whether external applicants could also be considered.  *See* Pl.'s Opp'n, Ex. 41, ECF No. 72-8. But rather than expand the area of consideration, Mr. Harms indicated that it should be restricted to only VISN 8 employees—the same area in which Ms. Figueroa was employed.[3]  *See* Pl.'s Opp'n, Exs. 41, 44, ECF No. 72-8.  Doing so eliminated 99% of all VA staff that could be considered for the position.  Def.'s SMF ¶ 90; Pl.'s Resp. Def.'s SMF ¶ 90.  In addition, now that the position was upgraded to GS-15, it now required applicants to have one year of specialized

---

[3] "VISN" stands for "Veterans Integrated Service Networks," of which there are twenty-one across the country.  Def.'s SMF ¶ 84; Pl.'s Resp. Def.'s SMF ¶ 84.  VISN 8 covers Florida, Puerto Rico, and the Virgin Islands.  Def.'s SMF ¶ 85.

experience equivalent to that of a position at GS-14. *See* Pl.'s Opp'n, Ex. 44. On September 13, 2011, the position was publicized under Vacancy Announcement Number NY-11-RNS-535157, which was scheduled to remain open for a period of one week. *See* Pl.'s Opp'n, Ex. 44.

In the weeks leading up to the announcement of the position opening, Ms. Figueroa and Mr. Harms communicated on multiple occasions. *See* Pl.'s Opp'n, Ex. 36 at VA003440, ECF No. 72-6. In several of those communications, Ms. Figueroa asked for an "update." *See* Pl.'s Opp'n, Ex. 36 at VA003440. Then, on September 8, 2011, Mr. Harms indicated that the position "[s]hould be opening in the next serval days" and he would "let [her] know." Pl.'s Opp'n, Ex. 36 at VA003440. On September 13, 2011—the day that the vacancy announcement was released— Ms. Figueroa submitted her application. *See* Pl.'s Opp'n, Ex. 47, ECF No. 72-9. One week later, on the final day of the announcement, Ms. Vasser submitted her own application. Pl.'s Opp'n, Ex. 47. But, because Ms. Vasser was not a VISN 8 employee, she was determined ineligible for the position. Pl.'s Counter-SMF ¶ 265; Def.'s Resp. Pl.'s Counter SMF ¶ 265. And, in fact, of the eleven people who applied, only two were deemed eligible—Ms. Figueroa and another candidate. *See* Pl.'s Opp'n, Exs. 47, 49, ECF No. 72-9.

Mr. Harms later convened an interview panel of three RCS employees to review the candidates. Pl.'s Counter-SMF ¶ 269; Def.'s Resp. Pl.'s Counter-SMF ¶ 269. Despite having provided Ms. Figueroa assistance in her application, both Mr. McNamara and Mr. Davis were chosen to serve on the panel. Pl.'s Counter-SMF ¶ 269–70; Def.'s Resp. Pl.'s Counter SMF ¶ 269–70. The panel interviewed both candidates and ultimately rated Ms. Figueroa substantially higher than the other candidate. Def.'s Mot., Ex. 19, ECF No. 67-3. In fact, Mr. McNamara and Mr. Davis each gave Ms. Figueroa a perfect score in every category except one, in which Mr. Davis scored her 4 out of 5. *See* Def.'s Mot., Exs. 19, 22 at ¶ 57. Based on this result, the panel

recommended that Ms. Figueroa be selected for the GS-15 Regional Manager position. Pl.'s Resp Def.'s SMF ¶ 98; Def.'s SMF ¶ 98. Dr. Batres adopted the recommendation and selected her to fill the position. Pl.'s Resp Def.'s SMF ¶ 99; Def.'s SMF ¶ 99.

### C. OIG Investigation

In 2012, the VA Office of Inspector General ("OIG") investigated claims that Dr. Batres had engaged in prohibited personnel practices by giving preference to three of his "long-time friend[s]" by selecting them for open positions or creating positions for them within RCS. Def.'s Mot., Ex. 22 at ¶ 1. One of the claims that OIG investigated involved the circumstances of Ms. Figueroa's selection for the Bay Pines Regional Manager position. *See* Def.'s Mot., Ex. 22 at ¶ 1. After reviewing the evidence, OIG concluded that "the evidence, as a whole, shows that Dr. Batres intended to hire Ms. Figueroa for the GS-15 Regional Manager position before the position was announced and that he lied to OIG investigators about his relationship and frequency of contact with Ms. Figueroa in an attempt to cover up his actions." *See* Def.'s Mot., Ex. 22 at ¶ 51. OIG also stated that even though "Dr. Batres claimed that his relationship with Ms. Figueroa was 'all work' and strictly professional," the "tenor and substance of some of the email messages indicated that their relationship was that of being close, personal friends, and of having a deep-felt respect and admiration for one another," which was quite different from what Dr. Batres led OIG to believe. *See* Def.'s Mot., Ex. 22 at ¶ 54. Ultimately, OIG concluded that "Dr. Batres, [and certain other RCS employees] committed a prohibited personnel practice when they provided Ms. Figueroa with an advantage not afforded to any other applicant." *See* Def.'s Mot., Ex. 22 at ¶ 5.

## D.  Present Action

In 2014, Ms. Vasser brought suit in this Court alleging sex and race discrimination and retaliation based on her non-selection for numerous vacancies within the VA.  Ms. Vasser later amended her Complaint on two occasions, but in December 2016, this Court issued an opinion dismissing many of her claims.  *See Vasser v. McDonald*, 228 F. Supp. 3d 1 (D.D.C. 2016).  The only claims that now remain are her discrimination claims relating to non-selection for the Deputy Regional Manager position and her discrimination and retaliation claims relating to her non-selection for the Regional Manager position.  On July 14, 2017, the Secretary filed the present motion for summary judgment on all claims, which the parties have fully briefed and is now ripe for decision.[4]

## III.  LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial

---

[4] Defendant has also filed two consent motions for leave to file several exhibits under seal.  *See* ECF Nos. 67 & 77.  Upon consideration of those motions, the Court is satisfied that leave should be granted.  Accordingly, the Court grants the motions.

burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

Title VII of the Civil Rights Act prohibits an employer from discriminating against their employees on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), and forbids retaliation against an employee because he "opposed any practice made an unlawful employment practice by" Title VII, or because he "made a charge" under Title VII, *id.* § 2000e–3(a). To establish employment discrimination, a plaintiff must demonstrate that the plaintiff suffered an adverse employment action because of the employee's race, color, religion, sex, or national origin. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). On the other hand, to prove unlawful retaliation, a plaintiff must establish that he made a charge or opposed a practice made unlawful by Title VII, that the employer took a materially adverse action against him, and that the employer took the action because of his protected conduct. *See Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006) (Title VII). The D.C. Circuit, however, has explained that, at the motion the summary judgment stage, "the question whether plaintiff made out a prima facie case is almost always irrelevant." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Indeed, once an employer asserts a legitimate,

nondiscriminatory, non-retaliatory reason for its actions, inquiry into a plaintiff's prima facie case typically becomes "an unnecessary and improper 'sideshow.'" *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *Brady*, 520 F.3d at 494).

Instead, district courts should consider only whether "'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 493) (brackets omitted). To answer this question, the Court considers whether a reasonable jury could infer discrimination or retaliation "from 'all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its actions and [any] other evidence.'" *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016) (quoting *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (alteration in *Morris*)). "Whether the available evidence suffices to support a jury finding of [discrimination or] retaliation will, necessarily, be a contextual judgment." *Allen*, 795 F.3d at 40. "Typically, successful rebuttal of an employer's stated reason counts as evidence of the invidious motive that is a required element of a disparate treatment or retaliation claim." *Id.* (citing *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). Furthermore, "though evidence of pretext is not *per se* sufficient to permit an inference of discrimination [or retaliation], it usually will be enough to get a plaintiff's claim to a jury." *Jones*, 557 F.3d at 679 (internal quotations, citations, ellipses, and brackets omitted); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (courts "do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment.") (internal quotations omitted).

There are multiple ways in which a plaintiff may support an inference that an employer's stated reason for a challenged employment action was not the actual reason, and that the real reason was prohibited discrimination or retaliation. For example, the D.C. Circuit has held that "temporal proximity of an adverse action close on the heels of protected activity is a common and highly probative type of circumstantial evidence of retaliation." *Allen*, 795 F.3d at 40 (citing *Hamilton,* 666 F.3d at 1357–59). "Other common ways of proving invidious motive—whether retaliation or discrimination—include pointing to evidence that the employer treated other, similarly situated employees better; that the employer is 'lying about the underlying facts' of its decision; that there were 'changes and inconsistencies' in the employer's given reasons for the decision; that the employer failed to 'follow established procedures or criteria'; or that the employer's 'general treatment of minority employees' (or, in the retaliation context, employees who asserted their Title VII rights) was worse than its treatment of non-minorities (or employees who did not assert their Title VII rights).'" *Id.* (quoting *Brady,* 520 F.3d at 495 & n.3) (parentheses in original).

## IV.  ANALYSIS

### A.  Deputy Regional Manager Position

According to Mr. Walker, he selected Mr. Plummer over Ms. Vasser for the Deputy Regional Manager position because he determined that Mr. Plummer was the "most qualified and best applicant for the position." Walker Decl. ¶ 10–11. When an employer argues, like the VA does, that its hiring decision was based on the candidates' relative qualifications, "a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was '*significantly* better qualified for the job' than those ultimately chosen." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir.

2006)) (emphasis added). But "[i]n cases where the comparative qualifications are close, a reasonable jury would not usually find discrimination . . . ." *Adeyemi*, 525 F.3d at 1227. Instead, "the jury would 'assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call.'" *Id.* (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998); *accord Gilbert v. Napolitano*, 670 F.3d 258, 262 (D.C. Cir. 2012). In these cases, courts "'defer to the employer's decision of what nondiscriminatory qualities it will seek' in filling a position," *Jackson v. Gonzales*, 496 F.3d 703, 708 (D.C. Cir. 2007) (brackets omitted) (quoting *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003)), and "must respect the employer's unfettered discretion to choose among qualified applicants." *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 26 (D.C. Cir. 2013) (internal quotation marks omitted) (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

In considering whether there exists a significant disparity in the relative qualifications of Mr. Plummer and Ms. Vasser, it is helpful to consider how the D.C. Circuit has previously approached this question. In *Aka*, for example, the D.C. Circuit determined that a reasonable jury could conclude that the plaintiff, who was denied a pharmacy technician job, was "markedly more qualified" than the applicant who received the position. 156 F.3d at 1299. In that case, the plaintiff showed that he had nineteen years of experience as a hospital assistant and held both a bachelor's degree and a master's degrees. *Id.* at 1286, 1295–96. The applicant who was selected, however, had no college education, had worked in the hospital laundry for slightly over a year, and had spent only two months as a pharmacy volunteer. *Id.* at 1286, 1295–96. Thus, the court found that a reasonable jury could infer discrimination based on the significant qualifications gap between the plaintiff and the successful candidate. The court in *Hamilton v.*

*Geithner*, on the other hand, found that no such inference could be raised. 666 F.3d 1344, at 1353. There, the plaintiff had a bachelor's and master's degrees in relevant fields, and nineteen years of relevant experience. *Id.* By contrast, the successful candidate had no college degree, little formal training, and only eight years of relevant experience. *Id.* Even though the plaintiff "had far more formal training and education," "significantly greater technical expertise," and "broader [relevant] experience" than the successful candidate, the Court concluded that it was "a relatively close question" whether the qualifications gap was sufficient to support an inference of discrimination. *Id.* at 1352. Ultimately, the Court held that this gap alone was not significant enough to warrant such an inference. *Id.*

This case is not as close as the facts presented in *Hamilton*. Here, both Ms. Vasser and Mr. Plummer not only held bachelor's degrees in behavioral or social sciences, a prerequisite for the position, but both also held master's degrees. *See* Pl.'s Opp'n, Ex. 4 (Deputy Regional Manager candidates must have education and experience equivalent to a degree in behavioral or social science); Def.'s Mot., Ex. 3, ECF No. 66-6 (identifying Ms. Vasser's educational and professional background); Def.'s Mot., Ex. 2 (identifying Mr. Plummer's educational and professional background). Moreover, both Ms. Vasser and Mr. Plummer have multiple years of relevant experience. For example, Ms. Vasser spent more than fifteen years at the VA and had been in a managerial role as a Team Leader for approximately nine years. *See* Def.'s Mot., Ex. 3. Mr. Plummer had been at the VA for approximately nine years and had been a Team Leader, the same position held by Ms. Vasser, for approximately two years. *See* Def.'s Mot., Ex. 2. In addition, both Ms. Vasser and Mr. Plummer appear to have several years of relevant experience in the U.S. Army Reserves. *See* Def.'s Mot., Exs. 2–3. Thus, both Ms. Vasser and Mr. Plummer were clearly qualified for the position. And while Ms. Vasser may have more experience,

particularly more managerial experience at the VA, and may even be considered more qualified

than Mr. Plummer, in light of the case law in this Circuit, the differences in their relative

credentials would not appear so substantial that they might alone raise an inference of

discrimination. *See e.g., Hamilton*, 666 F.3d 1344, at 1352–53; *Barnette v. Chertoff*, 453 F.3d

513, 517 (D.C. Cir. 2006) (no inference of discrimination when the selected candidate had "less

supervisory experience overall (one year to [plaintiff]'s four) and her supervisory positions were

at a lower grade," but the successful candidate's "grade level qualified her for the position, she

had significant operations experience in relevant areas, and, unlike [plaintiff], she had a

permanent appointment to a position that supervised employees performing operations

functions").

But "an employment discrimination plaintiff is not limited to arguing that the employer's

explanation is wrong on the merits;" she can "show by other means that the explanation was

made up to disguise illegitimate bias." *Aka*, 156 F.3d at 1299. For instance, the plaintiff can

attempt to show "that the employer's explanation was fabricated after the fact by showing that it

contradicts other contemporaneous accounts of the employer's decision" or "that the employer's

explanation misstates the candidates' qualifications." *Id.* at 1295. A factfinder might also infer

discrimination from evidence showing "procedural irregularities in a highly subjective selection

process." *Hamilton*, 666 F.3d at 1352. Likewise, evidence of "attitudes suggesting the decision

maker harbors discriminatory animus" or "data showing that the defendant employs members of

the plaintiff's protected class at rates far below their numbers in the applicant pool and the

general population" might support an inference of discrimination. *Holcomb*, 433 F.3d at 899.

Here, a jury could reasonably find that the VA's purported rationale for not selecting her

is pretext for discrimination because, according to Ms. Vasser, Mr. Walker had originally offered

her the position, but later canceled the vacancy, re-announced it, and then gave the position to

Mr. Plummer instead. Pl.'s Opp'n at 30. At her deposition, Ms. Vasser testified that, in

September 2008, she had applied for the Deputy Regional Manager position under vacancy

announcement MPA 08-351 and that she interviewed with Mr. Walker. *See* Dep. Vivian Vasser

("Vasser Dep.") at 58:17–59:23, ECF No. 72-10. The next day, Ms. Vasser received a call from

Mr. Walker who told her that he was going to recommend that Dr. Batres select her for the

position.[5] *See* Vasser Dep. at 63:1–18, 64:16–19, 68:17–18, 70:2–16. When she returned home,

she contacted Mr. Walker to follow up on the status of her selection at which point Mr. Walker

informed her that he was still waiting for approval. Vasser Dep. at 64:16-19. A few months

after that, Ms. Vasser called a human resources representative to again inquire about the status of

the position, but this time she was informed that, in fact, the VA had canceled vacancy

announcement MPA 08-351. *See* Vasser Dep. at 74:5–76:21. Then, in April 2009, the same

Deputy Regional Manager position was advertised again, this time under Vacancy

Announcement number 2009-196-AA. *See* Def.'s Mot., Ex. 1; Walker Decl. ¶ 9. But even

though Ms. Vasser applied, *see* Pl.'s Opp'n, Ex. 10, the VA instead selected Mr. Plummer

without even conducting interviews, *see* Walker Decl. ¶ 10.[6]

---

[5] Although official offers could only be made by the human resources department, hiring officials did sometimes informally tell candidates that they have been selected for a position. Dep. Rachelle Seybold ("Seybold Dep.") at 45:14–46:9.

[6] The Secretary responds to Ms. Vasser's testimony by arguing that summary judgment is still appropriate because Ms. Vasser's account is uncorroborated. See Def.'s Reply at 5. But, contrary to the Secretary's position, Ms. Vasser's account is corroborated by at least two individuals: Ms. Elna Davis and Mr. Clarence Slaughter. According to Ms. Davis, when Mr. Walker first called Ms. Vasser, "Ms. Vasser placed the phone away from her ear as [Ms. Davis] stood close to her and heard Mr. Walker tell Ms. Vasser that he had selected her for the Deputy Regional Manager's position." Decl. Elna M. Davis ("Davis Decl.") ¶ 5, ECF No. 72-14. Similarly, Clarence Slaughter, another regional manager for RCS, claimed that he had served as a reference for Ms. Vasser and, sometime after he gave his recommendation, Mr. Walker informed him that he had selected Ms. Vasser for the position. See Decl. Clarence Slaughter

The Secretary points out, however, that Mr. Walker has refuted Ms. Vasser's account of the first vacancy announcement. Indeed, Mr. Walker attests that he did not "informally or formally select anyone" for the 2008 Deputy Regional Manager Position and that "[n]o one, including Dr. Alfonso Batres, told [him] to cancel [the] vacancy announcement." Walker Decl. ¶¶ 7–8. But without weighing the evidence and making a credibility determination as between Ms. Vasser and Mr. Walker, the Court cannot overlook Ms. Vasser's testimony in favor of the VA's version of events. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions, not those of a judge."); *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006) ("On the record at hand, neither the District Court nor this court can conclude that appellees' story is truthful and appellant's story is a fabrication, at least not if all of the evidence is viewed in the light most favorable to appellant as required by Federal Rule of Civil Procedure 56(c)."). In ruling on a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255. It is for the jury, and not the Court, to determine who is telling the truth.

---

("Slaughter Decl.") ¶¶ 1–2, ECF 72-14. Thus, Ms. Vasser's testimony does not stand alone. Regardless, the case law is clear that a plaintiff need not present corroborating evidence. *See Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016) ("To the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury— not the court on summary judgment—to discount it accordingly."); *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005) ("[T]here is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion." (internal quotation and citation omitted)); *Benton v. Laborers' Joint Training Fund*, 210 F. Supp. 3d 99, 117 (D.D.C. 2016) ("A plaintiff's own, even self-serving testimony, however, will often suffice to defeat summary judgment—particularly where she has firsthand knowledge of a fact or observed an event, and where the case depends on the jury's resolution of competing testimony and witness credibility.") (internal citation omitted).

While the hiring of one candidate over another similarly qualified candidate might not alone raise an inference of discrimination, such an inference may be drawn when the unsuccessful candidate was previously offered the same position only to have that offer rescinded under circumstances suggestive of discrimination. *See Byrd v. Vilsack*, 931 F. Supp. 2d 27, 40 (D.D.C. 2013) (denying summary judgment despite "strong, countervailing evidence" that employer selected "the most qualified candidate" because "a reasonable jury could find the fact that [employer] initially offered [plaintiff] the promotion, but then reneged on that offer just a couple of days after [plaintiff] complained about [employee]'s racial comment, to be evidence indicative of pretext or some retaliatory motive on the Department's part."). Assuming the truth of Ms. Vasser's evidence, as the Court must, a reasonable jury could conclude that Mr. Walker initially recommended that she be selected for the position, subject to Dr. Batres's approval, because Ms. Vasser was, or at least Mr. Walker believed that she was, the most qualified applicant for the position. Mr. Walker then inexplicably re-advertised the vacancy only to hire a white man who was arguably less qualified or, at best (according to the Secretary), held "similar qualifications," without conducting any interviews for the position. Def.'s Mot. at 12. Under those circumstances, the Court is convinced that a reasonable jury could conclude that the VA's stated non-discriminatory reason for not selecting Ms. Vasser is, in fact, pretext for discrimination. *Cf. Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 32 (D.D.C. 2003) (holding that employee established prima facie case of race discrimination based on canceled job vacancy that was re-posted and then filled by white employee). Accordingly, the Secretary is not entitled to summary judgment on Ms. Vasser's Deputy Regional Manager claim.

## B. Regional Manager Position

As with the Deputy Regional Manager position, the Secretary claims that the VA's actions relating to the Regional Manager position were not discriminatory, but instead based on the quality of the candidates who applied for the position. According to Dr. Batres, he canceled the first two announcements because "the applicants either lacked experience in RCS, had no or little regional office experience, and/or in general were not the best candidates for the job as they did not have regional office and/or substantial managerial and fiscal responsibility experience [he] was looking for." Batres Decl. ¶ 25. As a result, he claims that the position was re-classified as a GS-15 position in an effort "to attract qualified candidates with significant leadership, administrative, and fiscal experience." Batres Decl. ¶ 35. Dr. Batres does acknowledge—somewhat counter-intuitively given his purported desire for more-qualified applicants—that the area of consideration was restricted to applicants in VISN 8 in order to avoid excessive relocation costs, but suggests that if "RCS did not get qualified candidates, the plan was to open it up to all VA employees and then nationwide." Batres Decl. ¶ 36. That step was not ultimately required however because, after Ms. Figueroa applied, he considered her to be the most qualified candidate for the position. Batres Decl. ¶¶ 34–35, 38.

Having stated a non-discriminatory, non-retaliatory reason for Ms. Vasser's non-selection, it then becomes incumbent upon Ms. Vasser to offer evidence showing that the stated rationale is in fact pretext for discrimination or retaliation. One way that this can be achieved is through a showing of significant procedural irregularities in the selection process. *See Kilby-Robb v. Duncan*, 77 F. Supp. 3d 164, 174 (D.D.C. 2015) ("procedural irregularities in the selection process also may demonstrate that the employer's justification for a hiring or promotion decision was pretextual." (citing *Hamilton*, 666 F.3d at 1355)). For example, in

*Hamilton*, the employer required "documentation of a promotion action 'sufficient for a reviewer to reconstruct the action in its entirety' as well as maintenance of complete promotion files for two years," but in that case, interviewers had retained almost no records. 666 F.3d at 1356.

Here, the evidence that Ms. Vasser proffers easily suggests that Dr. Batres's stated rationale is untrue and that substantial procedural irregularities were present in the selection process. Indeed, viewed in the light most favorable to Ms. Vasser, the evidence suggests that Dr. Batres did not select Ms. Figueroa because she was the most qualified candidate, but because he had pre-selected her for the position. Indeed, among other things, it is undisputed that Dr. Batres communicated with Ms. Figueroa about the vacancy, that there were internal deliberations about the possibility of reassigning Ms. Figueroa to the position without competition, that Ms. Figueroa was given a copy of the newly revised position description before it was officially released, that Mr. Davis and Mr. McNamara helped Ms. Figueroa tailor her resume for the position, and that Mr. Davis and Mr. McNamara were two of three members on the interview panel that gave her a near perfect score. The OIG ultimately concluded that all of this was violative of federal personnel practices. While it is ultimately up to the jury to decide the weight of this evidence, this evidence quite clearly calls into question the veracity of Dr. Batres's qualifications-based rationale.[7]

---

[7] Defendant also argues that, with regard to the first two vacancy announcements for the Regional Manager position, Ms. Vasser must show that she was the most qualified person for the job because those announcements resulted in no selections. Def.'s Mot. at 15. While the Court finds that to be a highly questionable statement of the law given that the exact same position was later re-advertised and filled, even if the Secretary were correct, the argument would fail. Indeed, the evidence suggests that during Mr. Plummer's time as the Deputy Regional Manager, his supervisor, Mr. Walker, believed his performance in that position was highly inadequate. Indeed, in June 2010, shortly before Mr. Walker retired, Mr. Plummer wrote a letter to Dr. Batres in which he outlined several complaints about his treatment by Mr. Walker. *See* Pl.'s Opp'n, Ex. 14, ECF No. 72-3. Mr. Walker apparently thought that having Mr. Plummer serve as the Deputy Regional Manager was not "working out" and that perhaps Mr. Plummer should go "back to

"Typically, successful rebuttal of an employer's stated reason counts as evidence of the invidious motive that is a required element of a disparate treatment or retaliation claim." *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015) (citing *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005). Indeed, the discrediting of an employer's explanation is entitled "considerable evidentiary significance" because "a lie is evidence of consciousness of guilt." *Aka v. Washington Hosp. Ctr,* 156 F.3d 1284, 1292–93 (D.C. Cir. 1998). Thus, "it is often reasonable to think that an employer who lies or obviously bluffs about or shifts its rationale for challenged action is culpable of the charged discrimination or retaliation." *Allen*, 795 F.3d at 40.

But rebutting the employer's stated reasons is not always sufficient to survive summary judgment. The D.C. Circuit has acknowledged that "in some instances, . . . the fact that there are material questions as to whether the employer has given the real explanation will not suffice to support an inference of discrimination." *Aka v. Washington Hosp. Ctr,* 156 F.3d 1284, 1291 (D.C. Cir. 1998); *see also Desmond v. Mukasey*, 530 F.3d 944, 963 (D.C. Cir. 2008) ("there will be instances where . . . the plaintiff has . . . set forth sufficient evidence to reject the defendant's explanation, [yet] no rational factfinder could conclude that the action was discriminatory." (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000))). It explained that "[s]ometimes an employer may offer a meritocratic or otherwise high-sounding explanation for a decision intending to cover up an unsavory reason-but one that is not illegal under the antidiscrimination laws." *Carpenter v. Fed. Nat. Mortg. Ass'n*, 165 F.3d 69 (D.C. Cir. 1999).

---

being a team leader." Pl.'s Opp'n, Ex. 14 at VA004993. Based on this, a reasonable juror could quite easily conclude that Mr. Plummer would not have been considered to be a strong candidate for the Regional Manager position given that the former Regional Manager believed Mr. Plummer's performance in the Deputy position was so poor. Moreover, the nature of many of Mr. Plummer's complaints was that Mr. Walker was not giving him sufficient support and feedback, which in and of itself suggests that Mr. Plummer may not have been ready for the lead role as Regional Manager if he needs so much guidance as Deputy. *See* Pl.'s Opp'n, Ex. 14.

Under those circumstances, "[i]f the plaintiff explodes the phony reason with evidence that simply supports an unsavory but lawful alternative reason (or, more technically, offers evidence from which a jury might find such to be the true reason), the plaintiff cannot get to the jury." *Id.* Indeed, "there is no point in sending the case to the jury" when "the plaintiff calls the employer's explanation into question, but does so in a way that conclusively demonstrates that the real explanation for the employer's behavior is not discrimination, but some other motivation." *Aka*, 156 F.3d at 1291.

In this case, the Secretary argues that he is entitled to summary judgment because, notwithstanding the evidence demonstrating the falsity of Dr. Batres's purported rationale, the evidence at best supports a showing that Dr. Batres hired Ms. Figueroa out of favoritism, rather than discriminatory or retaliatory intent. While it is true that this Court must require that a discrimination and retaliation case have a discriminatory or retaliatory aspect, the Court "must also take care not to condone a defense that would immunize racial discrimination by giving it a different name." *Harris v. Hays*, 452 F.3d 714, 721 (8th Cir. 2006) (Gibson, J., concurring). An "employer could prefer X over Y because X is his friend, but he might choose to hire a friend of his own race in order to avoid hiring a person of a different race." *Id.* at 722 (Gibson, J., concurring); *see also Foster v. Dalton*, 71 F.3d 52, 57 (1st Cir. 1995) (noting that, in a case with evidence of favoritism, the facts could "support an inference of discriminatory intent," but could "equally support a finding of undiluted favoritism, unmixed with racial animus"). That is precisely what Ms. Vasser argues here. According to Ms. Vasser, "Dr. Batres was not merely assisting a friend," but instead using Ms. Figueroa as "a convenient foil to block Ms. Vasser's ability to compete in [a] way that would not draw suspicion." Pl.'s Opp'n at 41.

Such a theory is not unheard of in this Circuit. For example, in *Weathersby v. Sec. of Interior*, 242 F. Supp. 2d 20 (D.D.C. 2003), the plaintiff applied for a director position that was later canceled without any candidate having been selected. *Id.* at 21. The position was then re-advertised and plaintiff applied again, but ultimately someone else was selected. *Id.* In that case, the successful candidate signed a written affidavit attesting that "the fix was in from the beginning." *Id.* at 22. According to the affiant, the selecting official had "told [the affiant] that she had pre-selected him for the position" and "if [the affiant] did not apply, she would have to interview a Black man [whom] she [did] not want to interview, but had to be interviewed because he had filed several discrimination complaints." *Id.* (third and fourth alterations in original). Based on that record, the court denied summary judgment noting that this declaration constituted "direct evidence of a discriminatory and retaliatory motive." *Id.*

While the evidence supporting Ms. Vasser's claim is not the kind of direct evidence that the plaintiff in *Weathersby* relied on, the Court is satisfied that Ms. Vasser has shown enough to satisfy her burden on summary judgment. To start, Plaintiff's evidence does not "conclusively demonstrate[], that the real explanation for the employer's behavior is not discrimination, but some other motivation." *Aka*, 156 F.3d at 1291. To be sure, there is evidence that Ms. Figueroa received favorable treatment. But Plaintiff's evidence does not necessarily suggest that Ms. Figueroa was selected purely out of favoritism or that the decision was entirely untainted by any aspect of racial or retaliatory animus. Indeed, Dr. Batres has never conceded that he acted exclusively out of favoritism. And Ms. Vasser's theory is not at odds with the fact that RCS personnel gave Ms. Figueroa favorable treatment—indeed Ms. Vasser's theory embraces that fact. Furthermore, even though the OIG Report concluded that favoritism was at work in Ms. Figueroa's selection, it did not draw any conclusion with respect to any other potential racial or

retaliatory motives.[8]  Thus, the Court is satisfied that the evidence that Ms. Figueroa received

favorable treatment does not in and of itself entitle the Secretary to summary judgment.

In any event, Ms. Vasser has come forward with additional evidence from which a

reasonable jury could conclude that the VA's actions were based upon a prohibited motive.  With

respect to her retaliation claim, Ms. Vasser argues that the evidence shows that the VA was

"obsess[ed] with [her] EEOC case" during the time that it was considering transferring Ms.

Figueroa into the Regional Manager position.  Pl.'s Opp'n at 40.  She supports this argument by

pointing to an interview of an RCS employee taken during the OIG investigation.  In that

interview, the employee explained that there were some discussions within the VA in which they

were considering the idea of reassigning Ms. Figueroa from one position to a different position at

a lower grade without competition.  Interview Tr. at 30:8–33:1, ECF No. 86-4.  But, according to

him, some people were concerned about the legitimacy of taking that action and whether it might

be susceptible to challenge.  *See* Interview Tr. at 32:1–5.  Indeed, they believed that reassigning

Ms. Figueroa without competition might very well be subject to scrutiny because they were

aware that at least one person who had "applied for other regional manager positions but who

had not been selected" (presumably Ms. Vasser)  had filed some complaints . . . probably EEO

complaints."  Interview Tr. at 31:14–22.  While the testimony does not go so far as to support

Ms. Vasser's claim that the VA was "obsessed" with her EEO complaints, it does at least suggest

that members of RCS may have had her complaints on their mind while they were discussing

how to move Ms. Figueroa into the position.  When viewed in the light most favorable to Ms.

Vasser, the Court is persuaded that a reasonable jury could conclude that RCS was not just

---

[8] And even if the Report did conclude that Dr. Batres acted entirely based on cronyism, the jury is not bound by OIG's conclusions or its interpretation of the facts.

concerned by the potential scrutiny, but that the EEO complaints were in fact a motivation to place Ms. Figueroa in the Regional Manager position.

Ms. Vasser's race discrimination claim also survives summary judgment. As noted above, Ms. Vasser has thoroughly discredited Dr. Batres's stated rationale for hiring Ms. Figueroa and has also demonstrated that significant procedural irregularities abounded in the selection process. Ultimately, that highly dubious process resulted in the selection of a non-African-American candidate for the Regional Manager position. On motions for summary judgment, the Court is to consider whether a reasonable jury could infer discrimination "from 'all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its actions and [any] other evidence.'" *Morris*, 825 F.3d at 668 (quoting *Gaujacq*, 601 F.3d at 577) (alteration in *Morris*)). This requires the exercise of "a contextual judgment." *Allen*, 795 F.3d at 40. Typically, however, the courts "do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment." *Hamilton*, 666 F.3d at 1351 (internal quotations omitted). In this case, the Court is satisfied that the significant evidence showing that Dr. Batres's stated rationale (which the Secretary has adopted in this action) is a lie combined with Ms. Vasser's *prima facie* evidence that she was twice deemed qualified for the exact position, yet the position was awarded to someone outside of Ms. Vasser's protected class, is enough to get her case to the jury. Indeed, the Court finds that under such circumstances, the jury is the more appropriate body to determine whether all of the smoke in this case amounts to a fire.

## V. CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 66) and **GRANTS** Defendant's Consent Motions for Leave to File Under Seal (ECF Nos. 67 & 77). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 22, 2017                                              RUDOLPH CONTRERAS
                                                                                          United States District Judge