UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VIVIAN VASSER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0185 (RC) |
| | : | | |
| v. | : | Re Document No.: | 56 |
| | : | | |
| DAVID SHULKIN, Secretary, | : | | |
| United States Department of Veterans Affairs | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

GRANTING PLAINTIFF VIVIAN VASSER'S MOTION FOR SPOLIATION OF EVIDENCE AND SANCTIONS

### I. INTRODUCTION

This case involves an employment discrimination action brought by Plaintiff, Vivian Vasser, against David Shulkin in his capacity as Secretary of the United States Department of Veterans Affairs ("VA"). Ms. Vasser claims that the VA discriminated and retaliated against her when it failed to promote her several times over the course of three years. The matter now comes before the Court on Ms. Vasser's Motion for Spoliation of Evidence and Sanctions ("Pl.'s Mot."), ECF No. 56. For the reasons set forth below, that motion is **GRANTED**.

### II. FACTUAL BACKGROUND

In September 2008, Ms. Vasser applied for a position as a Deputy Regional Manager for the Readjustment Counseling Service ("RCS") at the VA in Bay Pines, Florida under Vacancy Announcement No. MPA 08-351 (the "2008 Vacancy" or "2008 Position"). Second Am. Compl. ("SAC") ¶ 18, ECF No. 19. According to Ms. Vasser, the former Regional Manager responsible for selecting a candidate wanted to hire her, but was unable to get the necessary

approval from Dr. Alfonso Batres, the former chief of RCS. SAC ¶ 18. Thus, instead of selecting Ms. Vasser, the vacancy was canceled. SAC ¶ 18. A few months later, in April 2009, that very same position was advertised again, this time under Vacancy No. 2009-196-AA (the "2009 Vacancy" or "2009 Position"). SAC ¶ 19. Ms. Vassar once again applied for the position, but ultimately someone else was selected. See SAC ¶ 21–28.

In February 2010, Ms. Vasser filed a formal Equal Employment Opportunity ("EEO") Complaint in which she alleged that her non-selection for the 2009 Position was discriminatorily motivated. See Mot. Dismiss, Ex. 13, ECF No. 21-5. In an attachment, Ms. Vasser described the history of her non-selection, including how she had previously been offered the 2008 Position before it was later canceled and re-advertised. See Def.'s Partial Mot. Dismiss, Ex. 13, ECF No. 21-5. The VA's Office of Resolution Management ("ORM") accepted Ms. Vasser's EEO Complaint for investigation and further processing, but limited the investigation solely to the 2009 Vacancy.[1] See Def.'s Partial Mot. Dismiss, Ex. 15, ECF No. 21-5. In June 2010, after Ms. Vasser complained that ORM had failed to accept her non-selection claim for the 2008 Vacancy, ORM informed her that any non-selection claim that she was sought to assert relating to the 2008 Vacancy must be dismissed because it was untimely.[2] See Def.'s Partial Mot. Dismiss, Ex. 14, ECF No. 21-5. Thus, ORM did not conduct a separate investigation into Ms. Vasser's non-selection under that vacancy announcement. Winston Johnson Decl. ¶ 13.

---

[1] ORM is a component of the VA that is charged with documenting and investigating complaints made under the laws covered by the Equal Employment Opportunity Commission and provides EEO complaint processing services, including counseling, alternative dispute resolution, and investigation. Winston Johnson Decl. ¶ 2, ECF No. 61-6.

[2] Ms. Vasser appealed this decision in November 2010, see Pl.'s Reply, Ex. 20, ECF No. 65-1, but ultimately withdrew her request for a hearing and the issue went undecided, Pl.'s Reply at 14.

However, even despite the dismissal, both the EEO investigator and Ms. Vasser apparently viewed the facts surrounding the 2008 Vacancy to be relevant to her non-selection claim for the 2009 Vacancy.  Indeed, the EEO investigator issued questions to relevant VA personnel, including Dr. Batres and a human resources representative, inquiring about the 2008 Vacancy and specifically linked it to the investigation of the 2009 Vacancy.  *See* Pl.'s Mot., Ex. 2.  Likewise, in November 2010, Ms. Vasser propounded her own interrogatories and document requests relating to the 2008 Vacancy.  *See* Pl.'s Mot., Ex. 3, ECF No. 56-1.  Counsel for the VA, however, refused to address or provide the discovery that Ms. Vasser requested because ORM had dismissed her 2008 Vacancy claim as untimely.  *See* Pl.'s Mot., Ex. 4, ECF No. 56-1.  Indeed, agency counsel suggested that the discovery was "irrelevant an[d] immaterial to the subject claim."  Pl.'s Mot., Ex. 4; Pl.'s Mot. Ex. 5, ECF No. 56-1.  Although Ms. Vasser did not seek to compel responses to her discovery requests, *see* Pl.'s Reply at 13, in her correspondence with agency counsel, she continued to maintain that her prior non-selections were relevant to "rebut any proffer that the agency possessed a legitimate basis for its non-promotion of Ms. Vasser," especially given "Dr. Batres's role in *each* of the non-selections," Pl.'s Reply, Ex. 22, ECF No. 65-1 (emphasis in original).

Ultimately, Ms. Vasser filed suit in this Court alleging discrimination and retaliation stemming from her non-selection for ten separate vacancies, including both the 2008 Vacancy and the 2009 Vacancy.  *See* First Am. Compl., ECF No. 5.  Ms. Vasser again propounded discovery requests on Defendant and again sought information and documents relating to each of her prior non-selections.  *See* Pl.'s Mot., Ex. 6, ECF No. 56-1.  Defendant objected to the discovery on the grounds that some of the claims, including the claim regarding the 2008 Vacancy, was the subject of a partial motion to dismiss.  *See* Pl.'s Mot., Ex. 6.  Ms. Vasser

3

protested Defendant's objections, *see* Pl.'s Mot. Ex. 7, ECF No. 56-1, and eventually brought the issue before the Court on September 28, 2016. After hearing argument from counsel, the Court ordered that the Secretary produce the documents that Ms. Vasser had requested. *See* Hr'g Tr. at 13:15–17 (Sept. 28, 2016); Minute Order (Sept. 28, 2016). However, rather than produce documents relating to the 2008 Vacancy, the Secretary provided Ms. Vasser with a declaration from a human resources representative stating that she was unable to locate any documents other than the vacancy announcement and that, under the VA's Record Control Schedule, any documents relating to that vacancy should have been previously destroyed. *See* Pl.'s Mot., Ex. 8 ¶¶ 6–9. A later deposition of that representative revealed that this destruction would have happened in January 2011. Dep. Rachelle Seybold at 43:12–44:5.

In December 2016, the Court issued an opinion dismissing Ms. Vasser's non-selection claim for the 2008 Vacancy because her EEO contact regarding that claim was indeed untimely. *See* Mem. Op., ECF No. 50. The Court, however, made clear that this decision did not mean that the failure to promote Ms. Vasser to the 2008 Vacancy was irrelevant to her claim concerning the 2009 Vacancy. *See* Mem. Op. at 20 n.12.

On April 18, 2017, Ms. Vasser filed the instant motion for spoliation sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. *See* Pl.'s Mot. Ms. Vasser requests adverse findings of fact, appropriate inferences related to this evidence and, if appropriate, a missing evidence jury instruction and attorney fees. Thereafter, on October 12, 2017, the Court heard argument from both parties on the motion and ultimately requested further briefing from the parties, which the parties timely submitted for the Court's review.

## III. LEGAL STANDARD

A party has a duty to preserve potentially relevant evidence whenever "litigation is reasonably foreseeable." *Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161, 170 (D.C. Cir. 2013); *see also Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1481 (D.C. Cir. 1995) (a party to litigation has "an obligation to preserve and also not to alter documents it knew or reasonably should have known were relevant . . . if it knew the destruction or alteration of those documents would prejudice" an opponent.). "A party that fails to preserve evidence 'runs the risk of being justly accused of spoliation'—defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation'—and find itself the subject of sanctions." *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011) (quoting *D'Onofrio v. SFX Sports Group, Inc.*, No. 06-0687, 2010 WL 3324964, at *5 n.5 (D.D.C. Aug. 24, 2010)). "The sanctions available for the destruction of documents or evidence with notice of their potential usefulness in litigation may include the assessment of fines or attorneys' fees and costs, the preclusion of certain lines of argument that might have been advanced by the culpable party, and/or the issuance of an instruction informing jurors that they may draw an adverse inference from the spoliator's actions." *Id.* "A court generally imposes such sanctions in the exercise of its inherent authority 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (quoting *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003)). However, "[t]hat authority 'must be exercised with restraint and discretion.'" *Id.* "Moreover, because the overriding purpose of the inherent power is 'to achieve the orderly and expeditious disposition of cases,' the use of this power should reflect our judicial system's strong presumption in favor of

adjudications on the merits." *Shepherd*, 62 F.3d at 1475 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

The party seeking sanctions bears an evidentiary burden that is calibrated to "ensure that the gravity of [the] sanction corresponds to the misconduct." *Shepherd*, 62 F.3d at 1479. In the context of a party seeking an adverse inference instruction, the moving party must show that such a sanction is supported by a preponderance of the evidence. *See Clarke v. Washington Metro. Area Transit Auth.*, 904 F. Supp. 2d 11, 21 (D.D.C. 2012) (citing *Shepherd*, 62 F.3d at 1477–78. Specifically, the requesting party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind"; and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008) (internal quotation omitted).

## IV. ANALYSIS

In opposing Ms. Vasser's motion for sanctions, the Secretary argues that there is no evidence that any relevant documents were ever destroyed and that Ms. Vasser has not otherwise made the requisite showing of an entitlement to relief. For the reasons stated below, the Court concludes that Ms. Vasser has made a sufficient showing to meet her burden and that a spoliation instruction is an appropriate remedy in this case.

### A. Existence of Destroyed Documents

The analysis of Ms. Vasser's spoliation motion must necessarily begin with the issue of what documents in the Merit Promotion File, if any, existed. Of course, there can be no spoliation of

6

evidence if the evidence sought did not exist. *See Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 61 (D.D.C. 2012) ("[I]f no [] evidence was created, it could not have been destroyed."). The Secretary points out that Ms. Vasser has already received a copy of the announcement for 2008 Vacancy and its cancellation notice. Def.'s Opp'n at 5. He argues that "[i]f Plaintiff suggests that Defendant failed to preserve other [2008 Vacancy] documents (beyond these two records), Plaintiff must at least identify what other documents that might have existed but were improperly destroyed." Def.'s Opp'n at 5–6.

The Secretary is correct on this point. A movant seeking sanctions for spoliation must demonstrate that the subject documents actually existed. For example, in *Mahaffey v. Marriot International*, 898 F. Supp. 2d 54, 57 (D.D.C. 2012), the plaintiff in that case claimed that he was injured at the defendant's hotel while he was exiting an elevator on his way to his room shortly after checking in. The plaintiff argued that the defendant failed to preserve investigative reports and similar documents relating to the plaintiff's alleged accident. *Id.* at 60. The defendant urged, however, that it had been unable to locate any such documents or find any witnesses that remembered creating such documents. *Id.* Rather than identify evidence showing that the documents ever existed, the plaintiff pointed to the defendant's policies and procedures and argued that an investigation *should* have been conducted. *Id.* at 60–61. The Court held that the plaintiff had failed to meet his burden to demonstrate spoliation because, without any showing that an investigation took place, there can be no basis to find that any investigative documents ever existed. *Id.* at 61.

Here, the Court is satisfied that Ms. Vasser has made a sufficient showing that at least some documents other than those already produced existed in the Merit Promotion File at the time of its destruction. In her reply, Ms. Vasser did not squarely address the Secretary's argument, instead she simply claimed that "[w]hat is contained in a 'Merit Promotion File' is not a secret." Pl.'s Reply at 9. But she did not specifically identify for the Court what these "non-secret" documents

7

supposedly were or otherwise provide specific evidence supporting their existence. *See* Pl.'s Reply at 9. The Court is convinced, however, that if the record shows that other people applied to the position, then the Merit Promotion File, at a bare minimum, must have contained application materials from those persons. With this issue in mind, the Court asked the parties at the October 13, 2017 motion's hearing whether people other than Ms. Vasser actually applied to the 2008 Vacancy. Neither party could definitively answer the question at the time. But in a subsequent filing, Ms. Vasser identified some evidence supporting the view that others did in fact apply for the position. *See* Pl.'s Submission Regarding Spoliation Evidence at 1, ECF No. 85. First, Ms. Vasser pointed to her deposition testimony in which she testified that, during her interview with Mr. Walker for the 2008 Vacancy, Mr. Walker informed her that he had also interviewed other candidates for the position.[3] Vasser Dep. at 62:17–25. Mr. Walker, however, implicitly disputes this purported admission because, according to him, he never interviewed Ms. Walker, making his purported admission impossible. *See* Walker Decl. ¶ 15. Nevertheless, Ms. Vasser also points to the fact that, when the VA re-advertised the same Deputy Regional Manager position just a few months later, twenty-five people submitted applications. The Secretary has not disputed this fact nor has the Secretary ever affirmatively claimed that no one else applied to the 2008 Vacancy. Although the evidence is relatively thin, the Court is persuaded that, based on this record, it is more likely than not that persons other than Ms. Vasser also applied to the 2008 Vacancy. Consequently, the Court is

---

[3] Mr. Walker's purported statement is not hearsay because it qualifies as an admission by a party opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. Rule 801(d)(2)(D) states that statements "offered against an opposing party . . . made by the party's agent or employee on a matter within the scope of that relationship and while it existed" does not qualify as hearsay. The D.C. Circuit has advised that "in the employment discrimination context," this Rule "requires only that the declarant have some authority to speak on matters of hiring or promotion or that the declarant be involved in the decision-making process in general." *Talavera v. Shah*, 638 F.3d 303, 309 (D.C. Cir. 2011). Because Mr. Walker was clearly involved in the hiring of his own Deputy, his purported statements in that regard are admissible as a statement by a party opponent.

swayed that Ms. Vasser has satisfied her burden to show by a preponderance of the evidence that the Merit Promotion File contained, not only her application, but also applications of other candidates.[4] *See Concrete Pipe & Prods. of Calif., Inc. v. Constr. Laborers Pension Tr. for S. Calif.*, 508 U.S. 602, 622 (1993) ("preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence" (internal quotations omitted)).

### B. Duty To Preserve

Having concluded that Ms. Vasser has adequately shown that the Merit Promotion File contained at least applications of other candidates, the Court is also persuaded that the VA had a duty to preserve those documents in connection with this litigation. A litigant "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Arista Records, Inc. v. Sakfield Holding Co.,* 314 F. Supp. 2d 27, 33 n.3 (D.D.C. 2004) (internal quotation omitted). In this case, Ms. Vasser clearly attempted to put the 2008 Vacancy documents at issue both before and after they were destroyed in approximately January 2011. Indeed, in February 2010, Ms Vasser filed a formal complaint of discrimination and, in an attachment to that complaint, described her non-selection for the 2008 Vacancy. Then, in the Summer of 2010, when the ORM accepted her

---

[4] During the motion's hearing, the Court requested that Defendant clarify its search for electronically stored information to determine whether the Defendant's search captured electronic information, such as emails, over the entire period that Vacancy Announcement No. MPA 08-381 was open (from August 29, 2008 through January 9, 2009). In its response, Defendant stated that emails for some custodians, such as Mr. Walker, spanned the entire relevant period. Def.'s Resp. Court Order at 1, ECF No. 79. However, for other custodians, such as Dr. Batres, the Secretary only searched for documents starting in January 2009, the very tail end of the relevant timeframe. Def.'s Resp. Court Order at 1–2. Nevertheless, the Court does not decide whether Defendant can be charged with spoliating or otherwise failing to produce any of those documents because Plaintiff failed to raise that issue in her motion, thereby waiving the issue. Because the Plaintiff failed to otherwise raise this issue, the Court declines to rule on the matter *sua sponte*.

complaint for investigation but limited that investigation solely to the 2009 Vacancy, Ms. Vasser complained that ORM failed to accept her claim based on the 2008 Vacancy. By November 2010, Ms. Vasser's counsel was specifically requesting documents relating to the 2008 Vacancy. And then in this litigation, Ms. Vasser again pled the issue concerning her nonselection for the 2008 Vacancy into her complaint and requested discovery pertaining to that vacancy.

The Secretary argues that, because Ms. Vasser's attempt to assert an independent claim concerning her non-selection for the 2008 Vacancy "was rejected as untimely at every step and there was no separate investigation of that positon," Defendant was therefore "not on 'notice' of any investigation surrounding Plaintiff's non-selection under [the 2008 Vacancy]." Def.'s Opp'n at 9. This argument plainly cannot stand. Whether Ms. Vasser could bring an independent action related to the 2008 Vacancy or whether there was an investigation that specifically considered her non-selection under that announcement does not necessarily answer the operative question of whether the Defendant knew, or reasonably should have known, that the evidence was potentially relevant to the action. Of course, if Ms. Vasser was permitted to assert a claim regarding her non-selection for the 2008 Vacancy, then the relevance of the documents would be obvious. But the fact that she is not permitted to do so—even though she did try—does not necessarily mean that the documents are irrelevant to the 2009 Vacancy or that Defendant should not have reasonably foreseen their relevance.

The 2008 Vacancy documents are patently relevant to Ms. Vasser's non-selection for the 2009 Vacancy and the VA most certainly knew or reasonably should have known that to be the case. Even though the VA solicited applications through two announcements, the two announcements were for the exact same position. Indeed, the only reason there was a 2009 Vacancy Announcement at all was because the VA did not make a selection among the candidates who applied in the 2008 Vacancy Announcement. Thus, the circumstances surrounding what happened in the 2008 Vacancy have a clear and direct nexus to Ms. Vasser's non-selection under the 2009 Vacancy. This alone should

have been sufficient to put the VA on notice that the Merit Promotion File documents were relevant to Ms. Vasser's action. But, even if Ms. Vasser's own complaints were not enough to put the VA on notice, the VA should have recognized this clear connection by at least July 2010 (after the ORM had dismissed the 2008 Vacancy non-selection) because the EEO investigator propounded questions to Dr. Batres and a Human Resources employee that specifically requested information about the 2008 Vacancy and tied it to the investigation about Ms. Vasser's non-selection for the 2009 Vacancy. *See* Pl.'s Ex. 2. Thus, the VA either knew or should have known that the 2008 Vacancy documents were related to Ms. Vasser's claim concerning the 2009 Vacancy before those documents were destroyed.[5] Consequently, the VA had a duty to preserve those documents for purposes of litigation.[6]

---

[5] The Secretary attempts to distinguish this case from *Gerlich v. U.S. Department of Justice*, 711 F.3d 161 (D.C. Cir. 2013), on the ground that, in that case, the Court found that there was "[u]nrebutted evidence" demonstrating that certain Justice Department officials "were on notice" that an investigation or future litigation was "reasonably foreseeable." *See* Def.'s Opp'n at 8–9. The Court in *Gerlich*, however, never required that the evidence of potential future litigation be unrebutted. In any event, the evidence that both Ms. Vasser and the EEO investigator attempted to put the circumstances of the 2008 Vacancy at issue in connection with the 2009 Vacancy claim before the documents were destroyed is, in fact, unrebutted. That ORM found the 2008 Vacancy claim to be untimely does not negate these facts or otherwise suggest that the agency should not have recognized the relevance of the documents to Ms. Vasser's remaining claims. Thus, this argument is without merit.

[6] The Secretary also argues that "it was not reasonably foreseeable that the[] documents were still relevant to Plaintiff's future litigation either at the agency level or in federal court" because "Ms. Vasser fail[ed] to pursue these documents in discovery at the administrative stage." *See* Def.'s Opp'n at 9–10. The Secretary cites to no case law supporting his position that Plaintiff must file a motion to compel to preserve the spoliation issue concerning documents Plaintiff plainly requested but for which her requests were rebuffed without justification. Regardless, the potential relevance of documents does not turn on whether a plaintiff pursues them at any given point. Each party has an affirmative obligation to preserve potentially relevant evidence regardless of whether or how an opposing party pursues it. In this case, the relevance of the documents to Ms. Vasser's non-selection for the 2009 Position was clear and the Secretary was on notice of that relevance. Those documents and that information did not cease to be relevant merely because Ms. Vasser did not move to compel their production at the administrative stage.

## C. Culpable State of Mind

The Court is also persuaded that the documents were destroyed with the requisite culpable state of mind. "[T]o justify the issuance of an adverse inference instruction, the destruction need not be purposeful, and negligent spoliation suffices." *Mahaffey*, 898 F. Supp. 2d at 61 (citing *Chen v. District of Columbia*, 839 F. Supp. 2d 7, 13–14 (D.D.C. 2011); *see also Grosdidier v. Broad. Bd. of Governors,* 709 F.3d 19, 27 (D.C. Cir. 2013) (spoliation inference may be "appropriate in light of the duty of preservation notwithstanding the fact that the destruction was negligent" (citing *Talavera v. Shah*, 638 F.3d 303, 312 (D.C. Cir. 2011))); *More v. Snow*, 480 F. Supp. 2d 257, 274–75 (D.D.C. 2007) ("[A] court may employ an adverse inference due to a party's 'failure to preserve evidence,' even if deliberate or reckless conduct is not present.") (quoting *Rice v. United States*, 917 F. Supp. 17, 19–20 (D.D.C. 1996)). In this case, the documents were destroyed pursuant to the VA's Record Control schedule. That is, the VA destroyed the documents in accordance with its typical practice for retaining documents. But this fact does not absolve the VA of its duty to preserve relevant documents for litigation. *See Talavera*, 638 F.3d at 311 (D.C. Cir. 2011) (fact that the records were destroyed as part of the defendant's "'typical' practice" was insufficient to overcome the duty to preserve them); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."); Fed. R. Civ. P. 37, advisory committee's notes (2006) ("When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a 'litigation hold.'"). As noted above, the VA knew or should have known that these documents were relevant to Ms. Vasser's claims at the time the VA voluntarily destroyed them and thus that decision was at least negligent. In fact, the VA

not only knew or should have known that these documents were relevant, it knew the Plaintiff had requested them (and has done so at every stage of this litigation), yet it failed to preserve them.

### D. Relevance of the Documents

"Once a court has determined that future litigation was reasonably foreseeable to the party who destroyed relevant records, the court must then assess . . . whether the destroyed records were likely relevant to the contested issue." *Gerlich v. U.S. Dep't of Justice*, 711 F.3d 161, 171 (D.C. Cir. 2013) (citing *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)). The D.C. Circuit has recognized that "in an inquiry that 'is unavoidably imperfect . . . in the absence of the destroyed evidence, [a court] can only venture guesses with varying degrees of confidence as to what that missing evidence may have revealed.'" *Id.* (quoting *Kronisch*, 150 F.3d at 127–28) (alteration in original). In circumstances when "the document destruction has made it more difficult for a party to prove that the documents destroyed were relevant . . . the burden on the party seeking the adverse inference is lower; the trier of fact may draw such an inference based even on a very slight showing that the documents are relevant." *Ritchie v. United States*, 451 F.3d 1019, 1025 (9th Cir. 2006) (quoted approvingly in *Gerlich*, 711 F.3d at 171).

Here, the relevance of the destroyed documents is readily apparent. Ms. Vasser claims that, not only did she interview for the 2008 Deputy Regional Manager position, Mr. Walker actually recommended her for the position. If Ms. Vasser is right, this fact would raise a serious question of why, when the exact same position was later readvertised in 2009, Mr. Walker instead chose a white man who at best held "similar qualifications." Pl.'s Mot. Summ. J. at 12, ECF No. 66-2. Mr. Walker, however, disputes Ms. Vasser's account and claims that he never selected Ms. Vasser and, in fact, never interviewed her. *See* John Walker Decl. ¶ 15. Documents in the Merit Promotion File, including applications filed by other candidates, would clearly have shed light on the truth of Ms.

Vasser's claim by, at the very least, showing whether or not Ms. Vasser was the most qualified applicant for the position. Thus, a reasonable factfinder could conclude that the lost evidence would have supported Ms. Vasser's claims.

### E. Remedy

Based on the foregoing, the Court concludes that Ms. Vasser has adequately shown that the VA negligently destroyed documents relating to Vacancy Announcement MPA 08-351, which a reasonable jury could conclude would have supported Ms. Vasser's claims, and that this destruction occurred at a time when litigation was reasonably foreseeable and the VA was under an obligation to preserve relevant documents. Under these circumstances, the Court finds that the appropriate remedy is the issuance of a missing evidence instruction to the jury. *See e.g.*, *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 15–16 (D.D.C. 2011).

The Court must decide then on the substance of that instruction. An adverse inference instruction is intended to be "remedial rather than punitive," *Shepherd*, 62 F.3d at 1478, and thus the Court must assess what instruction will suffice to remedy the harm Ms. Vasser suffered. Other courts in this District have observed that "any adverse inference instruction grounded in negligence" should "be considerably weaker in both language and probative force than an instruction regarding deliberate destruction." *Mazloum*, 530 F. Supp. 2d at 293. Ms. Vasser proposes the following language:

> Defendant failed to produce certain documents and emails that were within its control relating to the Deputy Regional Manager recruitment under vacancy announcement 08-351 and Ms. Vasser's assertion that she was qualified, interviewed and was recommended for selection to that position. You must, therefore, presume that the evidence contained in those documents would have been favorable to Ms. Vasser and unfavorable to defendant.

Pl.'s Proposed Adverse Inference Jury Instruction, ECF No. 85-1. The Court finds this language to be inappropriate under the circumstances, especially given that the instruction *requires* that the

jury make an adverse inference. Even the case that Ms. Vasser cites as support concludes that a permissive instruction, rather than a mandatory instruction, is appropriate when "the Court does not find intentional misconduct." *Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 380 (D.D.C. 2013).

The Court instead finds that the instruction proposed by Defendant, which has been used in other spoliation cases in this District, adequately addresses the harm suffered by Ms. Vasser. Thus, the Court proposes to give an instruction along these lines:

> You have heard testimony about a merit promotion file for Vacancy Announcement MPA-08-351 that has not been produced. That file related to the first solicitation for applicants to the Deputy Regional Manager position in Bay Pines, Florida. Counsel for plaintiff has argued that this evidence was in defendant's control and would have proven facts material to the matter in controversy.
>
> If you find that the defendant could have produced the evidence, and that the evidence was within the defendant's control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to the defendant.
>
> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether the defendant had a reason for not producing this evidence, which was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

*See Zhi Chen*, 839 F. Supp. 2d at 16 (quoting 4 Hon. Leonard B. Sand, et al., *Modern Federal Jury Instructions* ¶ 75.01 (2007) (Instruction 75–7: Party's Failure to Produce Evidence).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Vivian Vasser's Motion for Spoliation of Evidence and Sanctions (ECF No. 56). An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 22, 2017                                          RUDOLPH CONTRERAS
                                                                  United States District Judge

15